# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| PAID SEARCH ENGINE TOOLS, LLC, | ) ) | CIVIL ACTION NO. 2:07-cv-403 |
| *Plaintiff,* | ) ) ) | JURY TRIAL DEMANDED |
| v. | ) ) ) | |
| YAHOO! INC. | ) ) | |
| *Defendant.* | ) ) ) ) ) | |

| | |
|---|---|
| PAID SEARCH ENGINE TOOLS, LLC, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| GOOGLE INC., AND MICROSOFT CORP., | ) ) ) |
| *Defendants.* | ) ) ) ) |

**DEFENDANTS GOOGLE INC. AND MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR ANTICIPATION OF CLAIMS 12, 13, 15, 18 AND 22 OF U.S. PATENT 7,043,450 UNDER 35 U.S.C. § 102(e)**

## TABLE OF CONTENTS

**Page**

NOTE ON CITATIONS ........................................................................................ iv

I.     INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ........................................................... 2

     A.     GoTo.com's On-Line Auction for Search Results. .................................... 2

     B.     The Asserted Claims of the '450 patent Purport to Automate Bidding on a Paid Search Engine. ............................................................................ 4

     C.     The Prosecution History of the '450 patent. ........................................... 5

     D.     The Prior Art Konia Patent Discloses Automated Bidding Before the '450 patent. .................................................................................................. 6

III.     LEGAL STANDARD ............................................................................... 9

IV.     ARGUMENT ........................................................................................ 10

     A.     Konia Anticipates Independent Claim 12. ............................................ 10

         1.     Konia discloses "[a] method of managing an offeror's offer for a keyword made to a search engine." ............................................ 10

         2.     Konia discloses "receiving an authorization from said offeror." .............. 11

         3.     Konia discloses "monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror." ...................................................... 11

         4.     Konia discloses automatically "implementing said change . . . based upon the previously received authorization." ........................... 12

     B.     Konia Anticipates the Asserted Dependent Claims of the '450 patent. ........ 13

         1.     Konia discloses that "the identified change creates a differential in offers meeting certain criteria." ............................................... 13

         2.     Konia discloses that the "criteria identify differentials in offers characteristic of optimization opportunities." ............................... 13

         3.     Konia discloses that the "criteria identify differentials between offers larger than a minimum currency amount." ............................. 14

         4.     Konia discloses that the "change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer." ................... 14

i

5.      Konia discloses that the "change is generated in response to offered prices and other data." ...............................................................15

V.     CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alexander v. Eeds*,
  392 F.3d 138 (5th Cir. 2004) ...........................................................................10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................9

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005).................................................................12, 13

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................10

*Matsushita  Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...........................................................................................9

*Schering Corp. v. Geneva Pharms., Inc.*,
  339 F.3d 1373 (Fed. Cir. 2003).......................................................................10

## Statutes

35 U.S.C. § 102(e) .................................................................................................1, 2, 6

Fed. R. Civ. P. 56 ......................................................................................................1, 9

## <u>NOTE ON CITATIONS</u>

The patent-in-suit, U.S. Patent 7,043,450 ("the '450 patent"), is attached to the Declaration of Emily O'Brien ("O'Brien Declaration") as Exhibit 1.  U.S. Patent 7,225,151 ("Konia") is attached to the O'Brien Declaration as Exhibit 2.  U.S. Patent 6,269,361 ("Davis") is attached to the O'Brien Declaration as Exhibit 3.  U.S. Patent 6,243,691 ("Fisher") is attached to the O'Brien Declaration as Exhibit 4.  References to the patents are indicated by column and line number, or by claim number.  A reference to "3:15" means column 3, line 15.

The other documents cited herein are attached to the O'Brien Declaration as Exhibits 5-11.  Defendants' other exhibits are referred to with the prefix "Ex." followed by the number of the exhibit in question.  "Ex. 5" therefore refers to Exhibit 5 of the O'Brien Declaration.

Defendants Google Inc. and Microsoft Corporation (collectively, "Defendants"), through counsel pursuant to Fed. R. Civ. P. 56 and Local Rules 7 and 56, submit this Motion for Summary Judgment of Invalidity, together with the Declaration of Emily C. O'Brien.[1]

## I.   INTRODUCTION AND SUMMARY OF ARGUMENTS

The patent-in-suit, U.S. Patent 7,043,450 ("the '450 patent") claims a method of automating bidding on keywords on a paid search engine where the bid amounts determine the ordering of the search results.  Another patent, U.S. Patent 7,225,151 ("Konia"), filed prior to the earliest alleged conception date for the subject matter of the '450 patent, describes the exact same purported invention in reference to the exact same paid search engine (GoTo.com).  Under 35 U.S.C § 102(e), Konia accordingly anticipates **all** the claims of the '450 patent asserted against Microsoft and Google.

Prior to both Konia and the '450 patent, GoTo.com provided a search engine in which its customers paid (hence, the term – *paid* search engine) to have their websites appear in search results based on the particular keywords entered in a given search query.  When multiple customers bid on the same keyword, the customer that bid more would appear higher in the search results (i.e., the highest bidder for a given keyword would receive the first position, the second highest bidder the second position, and so forth).  Both Konia and the '450 patent describe adjusting the bids for such keywords on GoTo.com and other paid search engines to achieve a desired location in the search results.

Konia, which issued from an application filed on January 27, 2000, disclosed an automated adjustment of a bidder's bid on the paid search engine GoTo.com by monitoring and changing the bid automatically according to rules set by the bidder.  The '450 patent, which by Plaintiff's admission was first conceived of no earlier than February 10, 2000, similarly describes

---

[1] To avoid any argument that claim construction is needed for this motion, Defendants are applying <u>for purposes of this motion only</u> Plaintiff's proposed and apparent claim constructions. (*See* Ex. 5 (Infringement Contentions); Dkt. 78 (Joint Claim Construction and Prehearing Statement).)  Defendants reserve the right to contest Plaintiff's claim constructions.

automating the adjustment of a bidder's bid on the paid search engine GoTo.com.[2]   And, just as in Konia, the method disclosed in the '450 patent manages a bidder's bid by monitoring and changing the bidder's bid automatically according to rules set by the bidder.  Notably, the Examiner did not consider Konia when examining the '450 patent.

As set forth in more detail below, prior art Konia anticipates every element of independent claim 12 and dependent claims 13, 15, 18 and 22 of the '450 patent.  Accordingly, Defendants request that the Court grant summary judgment of invalidity under 35 U.S.C. § 102(e).

## II.   STATEMENT OF UNDISPUTED FACTS

A.   GoTo.com's On-Line Auction for Search Results.

1.   In the prior art, Internet search engines provided a way for end-users to search for information on the Internet based on "keywords" input by an end-user.  (*See, e.g.,* Davis, 2:42-46.)  Search engine results were generally displayed as a list of "links" to web pages.  (*Id.*)  Traditionally, search engines provided this list of web pages by using computer algorithms to identify the most relevant web pages in response to the search, and displaying those results in order of relevance.  (*Id.*, 2:46-67.)

2.   During prosecution of the '450 patent, the Examiner relied on U.S. Patent 6,269,361 ("Davis"), which discloses the GoTo.com paid search engine auction.  GoTo.com differed from some previous traditional search engines by auctioning placement of links to web sites in its search results.  Thus, bidders could bid on a particular keyword, and whichever bidder bid the most for a particular keyword would have the best position on the search results page for that keyword.  (*Id.*, 5:38-40.)  The asserted '450 patent describes GoTo.com as follows:

---

[2] Defendants do not agree with this alleged conception date, but that issue is not material to this motion.

> Recently, a new model for a paid Internet search engine has been introduced, best exemplified by the site GoTo.com. In a paid Internet search engine, content providers submit bids for each one or more keywords they desire to associate with their site. The paid search engine will respond to a user's request for sites with one or more keywords, by producing a list of links to those sites that have submitted bids on those keywords. The order in which links are identified is determined by the bid amounts provided by the sites—the site with the largest (cumulative) bid(s) for the keywords(s) identified by the user, appears first in the list of sites presented to the user, followed by the site with the second largest (cumulative) bid(s) and so on.

('450 patent, 1:40-52.)

3.      Figure 7 of Davis depicts search results presented by the Goto.com system for a search query on "Zip Drives."  The screen shows the bidders' bids.  The search result with the highest bid of $0.08 is first, followed by the ad with the $0.07 bid, and so on:



(Davis, Fig. 7 (labeling added).)

B.    The Asserted Claims of the '450 patent Purport to Automate Bidding on a Paid Search Engine.

4.     As disclosed in the specification, the alleged invention of the '450 patent is intended to be used with prior art paid search engines such as GoTo.com.  (*See* '450 patent, 1:40-41, 2:28-34.)

5.     The '450 patent describes a suggested problem with the then-existing tools for use with paid search engines like GoTo.com as not ensuring that a desired position (or rank) in search results is maintained as bidders change their bids:

> To date, few services have been introduced to aid in bidding on paid search engine keywords. One such service accumulates generic statistics on the bid ranges for particular positions (e.g., 6, 12, etc.) for particular keywords at a paid search engine. This data is useful in selecting keywords on which to bid, but does not provide any assistance in managing bids that have been placed to ensure those bids are optimized and that a desired position has been maintained as competitors change their bids for the selected keywords.

(*Id.*, 2:16-24 (emphasis added).)

6.     The '450 patent purports to solve the suggested problem by submitting new bids on behalf of the bidder in accordance with parameters provided by the bidder.  As the specification describes:

> if authorization has been obtained from the subscriber, the keyword bid optimizing service may automatically submit new bids on behalf of the subscriber to the paid search engine. For example, bid prices may be increased or lowered, as needed to meet the subscriber's pre-identified requirements. Bids may be increased in order to recapture the bidder position desired by the subscriber. Bids may be decreased whenever a gap of greater than the minimum bid difference exists between the subscriber's bid and the next lower bid.

(*Id.*, 5:60-6:2 (emphasis added).)  The '450 patent explains that "[a]utomatic optimization of bids in this manner frees the subscriber of the burden of resubmitting bids with each new optimization opportunity."  (*Id.*, 6:2-4.)

7.      Independent claim 12, as well as dependent claims 13, 15, 18 and 22, claim this automated bid adjustment.

8.      Claim 12 is presented below labeled with letters (a, b, c) to delineate the steps:

A method of managing an offeror's offer for a keyword made to a search engine, said offer identifying an amount said offeror will pay upon a searcher's use of an offeror-supplied reference located upon the keyword within said search engine, comprising

[a] receiving an authorization from said offeror,

[b] after receipt of said authorization, monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror, and

[c] implementing said change in said offeror's offer on behalf of said offeror based upon the previously received authorization without further intervention of said offeror.

9.      Claims 13, 15, 18 and 22 depend from claim 12, and thus incorporate all of the limitations of claim 12.  Claim 13 recites that "the identified change creates a differential in offers meeting certain criteria."  Claim 15 recites "the criteria identify differentials between offers larger than a minimum currency amount."  Claim 18 requires that "the change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer."  And claim 22 requires that "said change is generated in response to offered prices and other data."[3]

C.      The Prosecution History of the '450 patent.

10.      During prosecution, all claims were initially rejected based on Davis, which, as detailed above, discloses the operation of the GoTo.com paid search auction with which the '450 patent was designed to be used.  (Ex. 6, 2-5.)  After amending the claims, the applicants argued that Davis did not provide a means of automatically changing bids without further human intervention.  (Ex. 7, 15.)

_____

[3]  Plaintiff additionally asserts claims 1, 4, 5, 7, and 10 against Yahoo!, but not Microsoft or Google.

11.    The patent office, however, again rejected all claims as obvious in view of Davis combined with the Fisher reference (Ex. 8, 4-5), which discloses an e-commerce auction site with a system for automatically changing bids without further human intervention (Fisher, 12:33-61).

12.    In response, the applicants argued that the Fisher reference relied upon by the examiner was not applicable because it did not describe a paid search engine auction.  (Ex. 9, 10.)  Applicants amended all claims, replacing "bid" with "offers for a keyword. . . said offers identifying an amount an offeror will pay upon the searcher's use for an offeror-supplied reference located using the keyword within said search engine."  (*Id.*, 6.)  The patent office then allowed all claims.  (Ex. 10.)

D.    The Prior Art Konia Patent Discloses Automated Bidding Before the '450 patent.

13.    The Konia Patent, titled "Online Auction Bid Management System and Method," issued to Brad S. Konia on May 29, 2007.  (Konia.)

14.    The application that became the Konia patent was filed on January 27, 2000 (Konia), one month prior to the earliest alleged conception date of the invention claimed in the '450 patent, February 10, 2000 (Ex. 11 (Plaintiff's Answers to Defendants' First Set of Interrogatories), 4).  Thus, it is prior art to the '450 patent under 35 U.S.C. § 102(e) ("a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent").  Konia was not considered during the prosecution of the '450 patent. Like the Fisher reference relied upon by the Examiner during prosecution of the '450 patent, Konia discloses a bid management system for automatically changing bids without further human intervention.  (Konia, 1:34-37.)  Unlike the Fisher reference, however, Konia specifically discloses an automated bid management system that was meant to be used expressly with paid search engines such as GoTo.com, the feature the Examiner found lacking in the Fisher reference when allowing the '450 claims.  (*Id.*, 1:6-30.)

15.    Konia describes GoTo.com as follows:

> Continuous auctions include those for bidding for Internet search engine key-phrases in order to achieve the highest possible rankings on a search engine. The search engine found at GOTO.COM by Goto.com, Inc. of Pasadena, Calif. is an exemplary continuous auction. In this type of auction, the search engine lists web-page search results for a key-phrase search in the order of bid prices from advertisers. The advertiser with the highest bid for a given key-phrase appears first in the list, the next highest bidder appears second, etc. Since key-phrases are intangible, the same key-phrase can be sold to an unlimited number of users and the auction runs continuously with the rankings changing according to the current bids from advertisers.

(*Id.*, 1:10-22).

16.    Like the '450 patent, Konia also suggests that there was a difficulty in monitoring bids in prior art paid search engine auctions:

> As these and other types of continuous auctions become more common in many areas of commerce, it will become more difficult for bidders to monitor bids in several different auctions.

(*Id.*, 1:23-26.)

17.    Also like the '450 patent, Konia purports to solve this suggested problem through a system that monitors bids and automatically adjusts them according to rules defined by the bidders:

> There exists a need for a system that monitors the current rankings in auctions and automatically adjusts its bids according to the rules defined by its user.

(*Id.*, 1:27-30.)

18.    In the paid search engine auction embodiment, Konia describes an automated bidding method for search engine keywords. (*See generally id.*, Fig. 2 and supporting text).  In this disclosed embodiment, the bidder selects a desired ranking along with a maximum potential bid. (*Id.*, 3:64-4:2.)  Subsequently, the method automatically adjusts the bidder's current bid to be the lowest amount required to maintain the desired ranking. (*Id.*, 4:56-62; Fig. 2, steps 210 and 212.) This may result in increasing the previous bid, for example if a new bidder enters the

auction with a higher bid or if a lower bidder increases his bid.  (*Id.*)  Konia also discloses

decreasing the current bid if a higher bidder drops out or the next lowest bidder lowers the bid

floor.  (*Id.*)

19.     The basic algorithm for evaluating and adjusting the bids in paid search engines

set out in Konia matched with the elements of claim 12 of the '450 patent shows that Konia

anticipates claim 12:

**Konia Specification**                    **'450 Patent Claim 12**

The online bid management system 102 receives maximum and minimum bids on a plurality of search terms that may be typed into the search engine by search engine users wherein different rankings are determined for each search term for each of a plurality of bidders.

12. A method of managing an offeror's offer for a keyword made to a search engine, said offer identifying an amount said offeror will pay upon a searcher's use of an offeror-supplied reference located upon the keyword within said search engine, comprising

In step 206, the system loops through each term that the bidder has bid on in the current search engine 150 of the loop established in step 204. The system checks for whether the bidder's desired position is met for the particular web page and term, step 208. For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page. Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

[a] receiving an authorization from said offeror

[b] after receipt of said authorization, monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror, and

[c] implementing said change in said offeror's offer on behalf of said offeror based upon the previously received authorization without further intervention of said offeror.

(Konia, 3:54-4:2, 48-62.)

20.     The specification of Konia further illustrates the applicability of Konia to

dependent claims 13, 15, 18 and 22:

**Konia Specification**                    **'450 Patent Claim 13**

Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

13. The method of claim 12 wherein the *identified change creates a differential in offers meeting certain criteria.*

(Konia, 4:55-62.)

-8-

**Konia Specification**

Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

(Konia, 4:55-62.)

**'450 Patent Claim 15**

15. The method of claim 14 wherein the criteria identify differentials between offers larger than a minimum currency amount.

**Konia Specification**

Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

(Konia, 4:55-62.)

**'450 Patent Claim 18**

18. The method of claim 12 wherein the change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer.

**Konia Specification**

In step 206, the system loops through each term that the bidder has bid on in the current search engine 150 for the loop established in step 204. The system checks for whether the bidder's desired position is met for the particular web page and term, step 208. For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page. Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

(Konia, 4:48-62.)

**'450 Patent Claim 22**

22. The method of claim 12 wherein said change is generated in response to offered prices and other data.

## III.   **LEGAL STANDARD**

Summary judgment is warranted if the pleadings and discovery show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Defendants bear the initial burden of showing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.  The burden then shifts to Plaintiff to set forth specific facts demonstrating a genuine factual issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Matsushita*

-9-

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff cannot rest upon the mere allegations or denials of the pleadings, but must instead produce specific facts, by affidavit or other evidentiary materials, showing that there is a genuine triable issue. *See Anderson*, 475 U.S. at 248. This Court need only resolve factual issues of controversy in favor of Plaintiff where the facts specifically averred by Plaintiff contradict material facts specifically averred by the Defendants. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Because Konia discloses each limitation of claims 12, 13, 15, 18 and 22 of the '450 patent, each of these claims is anticipated and thus invalid.

IV.   **ARGUMENT**

    A.    <u>Konia Anticipates Independent Claim 12.</u>

Konia discloses the very same alleged innovation to the very same prior art system as is set forth in independent claim 12 of the '450 patent: applying automated bidding to the GoTo.com paid search engine. In doing so, Konia discloses all the elements of independent claim 12.

    1.    <u>Konia discloses "[a] method of managing an offeror's offer for a keyword made to a search engine."</u>

The preamble of claim 12 requires "[a] method of managing an offeror's offer for a keyword made to a search engine said offer identifying an amount said offeror will pay upon a searcher's use of an offeror-supplied reference located using the keyword within said search engine." ('450 patent, claim 12.) Konia discloses just such a method. Indeed, the <u>title</u> of Konia is "Online Auction <u>Bid Management</u> System and Method." (Konia.) And like the '450 patent, the disclosed method and system of Konia manages a bidder's bid in a paid search engine such as

"GoTo.com," in which bidders bid on keywords for "ranking of hypertext links to web pages in search results in an online web page search engine. . . ."  (Konia, 1:10-22, 3:54-56.)

       2.       Konia discloses "receiving an authorization from said offeror."

Claim 12[a] requires "receiving an authorization from said offeror."  ('450 patent, claim 12[a].)  The file history makes clear that a maximum bid, or "bid limit," is such an authorization. The applicants stated:

> It should be noted that a 'bid' is the amount that will be paid if the bid is accepted. The <u>concept of a 'bid limit'</u> has recently been popularized by eBay.com and its competitors: <u>it is a maximum amount that the site operator can automatically bid on the bidder's behalf.</u>  Both a 'bid' and <u>a 'bid limit' represent authorized payment amounts</u>, and can be ranked against each other and managed as explained by and claimed by the present application.  Indeed, <u>the concept of automatically changing bids in response to a prior authorization, whether a 'bid limit' or something else, is <b>exactly</b> what is covered by claims 12 et seq. herein.</u>

(Ex. 7, 8 n.2 (emphasis added).)

Konia similarly discloses that bidders "enter maximum and/or minimum bids" into the bid management system:

> The server 100 may further comprise a database 104 comprising a relational database management system (RDBMS) 104 for storing bids and data relating to the service provided to the bidders. <u>Bidders may further enter maximum and/or minimum bids into the bidder terminals 175</u>. The online bid management system 102 keeps track of the maximum and minimum bids for each user who enters bids into the bidder terminals 175 into RDBMS 104.

(Konia, 3:33-44 (emphasis added); *see also id*., 3:65-67 (The bid management system "receives maximum and minimum bids on a plurality of search terms that may be typed into the search engine by search engine users. . . ").)  Thus, the "authorization" limitation of 12[a] is met in Konia.

       3.       Konia discloses "monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror."

Claim 12[b] requires: "after receipt of said authorization, monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror."  ('450 patent, claim 12[b].)  This limitation is also met in Konia.

-11-

Konia discloses a method that, after receiving an authorization through a maximum bid, "monitors the current rankings in auctions and automatically adjusts its bids according to the rules defined by its user."  (Konia, 1:27-30.)  Konia further discloses monitoring offers to see whether there is (1) an increase in the offeror's bid that achieves the desired position without exceeding the maximum bid; or (2) a reduction in the offeror's bid that still maintains desired position:

> In step 206, the system loops though each term that the bidder has bid on in the current search engine 150 of the loop established in step 204. The system checks for whether the bidder's desired position is met for the particular web page and term [*keyword*], step 208.  For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page.  Another example allows the bidder to choose a position, such as fourth in the results listing.  If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210.  Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212.

(*Id.*, 4:48-62 (emphasis added).)  This "monitoring" disclosed in Konia necessarily occurs after the receipt of a bid and authorization, and before the change can be implemented as in claim 12. (*See id.*, 4:19-32.)  Accordingly, Konia anticipates this limitation of claim 12.[4]

    4.     Konia discloses automatically "implementing said change . . . based upon the previously received authorization."

Claim 12[c] requires "implementing said change in said offeror's offer on behalf of said offeror based upon the previously received authorization without further intervention of said offeror."  ('450 patent, claim 12[c].)  This limitation is further met by Konia.

Konia discloses that "[t]he method is for automatically managing the auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids."  (Konia, 4:21-24 (emphasis added).)  Konia further discloses that this method "automatically adjusts. . . bids according to the rules defined by its user."  (*Id.*, 1:27-30

---

   [4]  Although Konia discloses one example of an "offer of interest" as that term is used in the claims of the '450 patent, the term "offer of interest" is indefinite because one of ordinary skill in the art would have no way to determine its legal boundaries.  *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1349 (Fed. Cir. 2005).

(emphasis added).)  Specifically, the bid may be automatically increased up to the maximum bid to achieve the desired position, or decreased to the lowest amount required to keep the desired position:



(*Id.*, Fig. 2; *see also id.*, 4:48-62.)  Again, Konia explicitly discloses that this implementing of changes is performed "automatically" thus anticipating this limitation of claim 12.

Because Konia anticipates all elements of independent claim 12, the claim is invalid.

    B.    <u>Konia Anticipates the Asserted Dependent Claims of the '450 patent.</u>

        1.    <u>Konia discloses that "the identified change creates a differential in offers meeting certain criteria."</u>

Claim 13 depends from independent claim 12, and requires "wherein the identified change creates a differential in offers meeting certain criteria."  ('450 patent, claim 13.)  Konia's bid management method identifies the differential between the bidder's current bid and the "minimum which allows the bidder to keep the position."  (Konia, 4:55-60.)  It then decreases the bid to that minimum bid amount.  (*Id.*)  This reduction is a <u>differential in offers</u>, e.g., the difference between two bids, and these bids meet <u>certain criteria</u>, such as the desired bid position and established bid minimums or maximums.[5]

        2.    <u>Konia discloses that the "criteria identify differentials in offers characteristic of optimization opportunities."</u>

Claim 14 depends from claim 13, and requires "wherein said criteria identify differentials in offers characteristic of optimization opportunities."[6]  ('450 patent, claim 14.)  Konia's system identifies opportunities to optimize an advertiser's bid by "check[ing] for whether the bidder's

---

   [5]  Although Konia discloses one example of "criteria" as that term is used in the claims of the '450 patent, the term "certain criteria" is indefinite because one of ordinary skill in the art would have no way to determine its legal boundaries.  *See Datamize, LLC*, 417 F.3d at 1349.

   [6]  Claim 14 is not asserted against Defendants, but asserted claim 15 depends on it.

desired position is met for the particular web page and term. . . ."  (Konia, 4:50-53.)  Konia also discloses that "[i]f the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may <u>reduce the bid to a minimum </u>which allows the bidder to keep the position, step 210."  (*Id.* (emphasis added).)  Thus, Konia <u>identif[ies] differentials in offers (bids) characteristic of optimization opportunities</u>, e.g., reducing a bid to maintain a desired position.

   3. <u>Konia discloses that the "criteria identify differentials between offers larger than a minimum currency amount."</u>

  Claim 15 depends from claim 14, and requires "wherein the criteria identify differentials between offers larger than a minimum currency amount."  ('450 patent, claim 15.)  Again, Konia checks for the difference between a bidder's bid and the minimum needed to maintain the bidder's position.  (Konia, 4:48-62.)  This "minimum needed to maintain the bidder's position" matches to the "minimum currency amount" element in claim 15.  "If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210."  (*Id.*, 4:56-60.)  Konia thus <u>identif[ies] differentials between offers larger than a minimum currency amount</u> – a competing bid and the minimum bid necessary to keep a bidder's desired position.

   4. <u>Konia discloses that the "change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer."</u>

  Claim 18 depends from claim 12, and requires that "the change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer."  ('450 patent, claim 18.)  Konia again specifically discloses this limitation:

   Another example allows the bidder to choose a position, such as fourth in the results listing.  If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, <u>the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210</u>.

(Konia, 4:55-60 (emphasis added).)  This "reduced bid" disclosed by Konia results from decreasing <u>an offer to reduce a gap between the offeror's offer</u> and a <u>lower offer</u> of a competitor.

    5.    <u>Konia discloses that the "change is generated in response to offered prices and other data."</u>

Claim 22 depends from claim 12, and requires that "said change is generated in response to offered prices and other data." ('450 patent, claim 22.)  Konia discloses monitoring competing bids and bid position.  (Konia, 4:48-62.)  Thus, Konia discloses that the change in said offeror's offer is generated in response to offered bid amounts (<u>offered prices</u>), bid minimums or maximums (<u>other data</u>), and desired position (<u>other data</u>).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment that claims 12, 13, 15, 18 and 22 of the '450 patent are invalid as anticipated in view of Konia.

Respectfully submitted,


Dated:  October 13, 2009                    By:      /s/ Emily C. O'Brien
                                                    Charles K. Verhoeven,
                                                    charlesverhoeven@quinnemanuel.com
                                                    David A. Perlson,
                                                    davidperlson@quinnemanuel.com
                                                    Antonio R. Sistos,
                                                    antoniosistos@quinnemanuel.com
                                                    Emily C. O'Brien,
                                                    emilyobrien@quinnemanuel.com
                                                    QUINN EMANUEL URQUHART
                                                    OLIVER & HEDGES, LLP
                                                    50 California Street, 22nd Floor
                                                    San Francisco, California  94111
                                                    Telephone:     (415) 875-6600
                                                    Facsimile:      (415) 875-6700

                                                    Nicholas H. Patton
                                                    SBN: 15631000
                                                    PATTON, TIDWELL & SCHROEDER, LLP
                                                    4605 Texas Boulevard
                                                    P. O. Box 5398
                                                    Texarkana, Texas 7550505398
                                                    (903) 792-7080
                                                    (903) 792-8233 (fax)

                                                    ATTORNEYS FOR DEFENDANT GOOGLE
                                                    INC.


Dated:  October 13, 2009                    By:      /s/ Laura L. Kolb, by permission ECO
                                                    Richard A. Cederoth
                                                    rcederoth@sidley.com
                                                    David T. Pritikin
                                                    dpritikin@sidley.com
                                                    Laura L. Kolb
                                                    lkolb@sidley.com
                                                    SIDLEY AUSTIN
                                                    One South Dearborn St
                                                    Chicago, IL 60603
                                                    Telephone: (312) 853-7000
                                                    Facsimile: (312) 853-7036

Brian Craft
bcraft@findlaycraft.com
Eric Hugh Findlay
efindlay@findlaycraft.com
Findlay Craft, LLP
6760 Old Jacksonville Highway, Suite 101
Tyler, TX 75703
Telephone: 903-534-1100
Facsimile: 903-534-1137

ATTORNEYS FOR DEFENDANT
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 13th day of October, 2009.

/s/ Emily C. O'Brien
Emily C. O'Brien