IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PAID SEARCH ENGINE TOOLS, LLC, | Civil Action No. 2:07-CV-403 |
| Plaintiff, | |
| v. | Judge David Folsom |
| YAHOO! INC., GOOGLE, INC., and MICROSOFT CORPORATION, | Jury Requested |
| Defendants. | |

**PLAINTIFF, PAID SEARCH ENGINE TOOLS, LLC'S, OPPOSITION TO DEFENDANTS GOOGLE INC. AND MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR ANTICIPATION OF CLAIMS 12, 13, 15, 18 AND 22 OF U.S. PATENT 7,043,450 UNDER 35 U.S.C. §102(e)**

## TABLE OF CONTENTS

NOTE ON CITATIONS..................................................................................................v

I.   ISSUE PRESENTED.........................................................................................1

II.  INTRODUCTION AND BACKGROUND TO THE PATENT AND SUIT..........1

III. RESPONSE TO STATEMENT OF UNDISPUTED FACTS...........................3

   A.  GoTo.com's On-Line Auction for Search Results................................................3

   B.  The Asserted Claims of the '450 Patent..................................................................3

   C.  The Prosecution History of the '450 Patent .......................................................5

   D.  The Konia Patent.................................................................................................6

IV.  ARGUMENT...................................................................................................10

   A.  The Legal Standard for the Grant of Summary Judgment of Invalidity Based on
       Anticipation Requires Both the Absence of a Genuine Issue of Material Fact and
       Proof of Invalidity by Clear and Convincing Evidence .....................................10

   B.  Anticipation Requires Proof That a Single Prior Art Reference Discloses Each
       and Every Element Set Forth in the Patent Claims...........................................12

   C.  The Defendants Have Failed to Adequately Support Their Argument of
       Anticipation with Expert Testimony Regarding Whether a Person of Ordinary
       Skill in the Art Would Consider the'450 Patent Anticipated by the Konia Patent.
       Patent .................................................................................................................13

   D.  Independent Claim 12 of the '450 Patent Is Not Anticipated by Konia.............14

      1.  Konia does not disclose "[a] method of managing an offeror's offer for a
         keyword made to a search engine, said offer identifying an amount said
         offeror will pay upon a searcher's use of an offeror-supplied reference located
         upon the keyword within said search engine .................................................14

      2.  Konia does not disclose "monitoring keyword offers at one or more Internet
         search engines to identify a change in said offeror's offer of interest to said
         offeror."........................................................................................................15

3.  Konia does not disclose "implementing said change in said offeror's offer on behalf of said offeror based upon the previously received authorization without further intervention of said offeror ................................................. 18

E.  Konia Does Not Anticipate Dependent Claim 13 ............................................. 19

F.  Konia Does Not Anticipate Dependent Claim 15 ............................................. 20

G.  Konia Does Not Anticipate Claim 18 ............................................................. 21

H.  Konia Does Not Anticipate Claim 22 ............................................................. 21

I.  There Exists At Least a Genuine Issue of Material Fact As to What Konia Teaches and Whether Konia Is At All Relevant to the Claims of the '450 Patent .......................................................................................................... 22

V.  CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

Cases

*Akamai Techs. v. Cable & Wireless Internet Servs.,* 344 F.3d 1186 (Fed. Cir. 2003) (quoting *Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358 (Fed. Cir. 2003))................................................................................................................12

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) ...........................................................11

*Centricut, LLC v. Esab Group, Inc.,* 390 F.3d 1361 (Fed. Cir. 2004) ............................13

*Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264 (Fed. Cir. 1991) ........................12

*Hutchins v. Zoll Med. Corp,* 492 F.3d 1377 (Fed. Cir. 2007) (citing *Anderson,* 477 U.S. at 255).......................................................................................................................11

*Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374 (Fed. Cir. 2005) .......................11

*Koito Mfg Co. Ltd., v. Turn-Key-Tech, LLC,* 381 F.3d 1142 (Fed. Cir. 2004) (quoting *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304 (Fed. Cir. 2002)) .....................13

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC,* 381 F.3d 1142 (Fed. Cir. 2004)...............11

*Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359 (Fed. Cir. 2008)(quoting *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542 (Fed. Cir. 1983))..............................................12

*Shatterproof Glass Corp. v. Libby-Owens Ford Co.,* 758 F.2d 613 (Fed. Cir. 1985) 11, 22

*SRI Int'l, Inc. v. Internet Security Sys., Inc.,* 511 F.3d 1186 (Fed. Cir. 2008) ( quoting *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628 (Fed. Cir. 1987))....................12

*Union Carbide Corp. v. Am. Can Co.,* 724 F.2d 1567 (Fed. Cir. 1984) .........................13

*Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 2009 U.S. App. LEXIS 20622, at *7 (Fed. Cir. Sept. 16, 2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)) .......................................................................................................................11

*Whelan Assocs. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222  (3rd Cir. 1986)................13

*Zenith Elec. Corp. v. PDI Comm. Sys., Inc.,* 522 F.3d 1348 (Fed. Cir. 2008) ........... 10, 11

Statutes
35 U.S.C. § 282 ...............................................................................................................11

Other Authorities

Fed. R. Civ. P. 56(c)..................................................................................................10

## <u>NOTE ON CITATIONS</u>

The patent-in-suit, U.S. Patent No. 7,043,450 ("the '450 patent"), is attached to the

Declaration of Emily O'Brien submitted by the Defendants as Exhibit 1.  The Konia

patent, U.S. Patent No. 7,225,151, is attached to the O'Brien Declaration as Exhibit 2.

References to other exhibits submitted by Defendants are in the form: Defendants Ex.

____.

Plaintiff is submitting the declaration of Jonathan Hochman ("Hochman Decl.")

as Exhibit 1 in support of the instant opposition to the motion for summary judgment.

Other exhibits submitted by Plaintiff in support are referenced as: Plt. Ex. ____.

I.      **ISSUE PRESENTED**

Whether claims 12, 13, 15, 18 and 22 of the patent in the suit, U.S. Patent No.

7,043,450, are anticipated under 35 U.S.C. §102(e) by U.S. Patent No. 7,225,151 to Konia.


II.     **INTRODUCTION AND BACKGROUND TO THE PATENT IN SUIT**

Plaintiff Paid Search Engine Tools, LLC ("PSET") is the owner of the U.S. Patent

No. 7,043,450 ("'450 Patent") in suit.  The '450 Patent includes 22 total claims, three of

which are independent: claims 1, 5 and 12.  Google Inc. ("Google") infringes claims 12, 13,

15 and 22.  Microsoft Corp. ("Microsoft") infringes claims 12, 13, 18 and 22.  Yahoo! Inc.

("Yahoo") infringes or has infringed each of the asserted claims.  However, Yahoo has not

joined in the motion.

In the late 1990s and early 2000s, much of Internet advertising took the form of

"banner advertisements" in which advertisers would pay Internet service providers or

webpage publishers to place advertisements on their websites.  This method of advertising

was similar to that in more traditional "broadcast" media, such as print media, radio and

television, in that the  ads were often irrelevant to a given advertiser and the advertiser paid

for the display of the ad regardless of whether or not it actually drove potential buyers to the

website.  As a result, many advertisers were unwilling to risk substantial advertising dollars

on Internet websites.

The '450 Patent relates to online advertising and, specifically, to what is known as

"pay-per-click" advertising at a paid search engine.  In pay-per-click advertising, an

advertiser associates its ad with one or more words, known as "keywords."  Ads are then

provided for display within the denominated sections of a webpage when the paid search

1

engine associates an Internet advertiser's activity with those keywords.  If the advertiser clicks on the link leading to the advertiser's webpage, known as a "clickthrough," the advertiser is then charged -- hence the name "pay-per-click."

Prior to the invention of the '450 Patent, pay-per-click systems were inefficient and unrefined.  For example, information on what competitors were bidding for clickthroughs on a given keyword was not readily accessible and could only be viewed one keyword at a time. Advertisers changing their bids were only presented with *their* "current bid" for a clickthrough and the "bid to become #1."  As a result, advertisers often over paid for clickthroughs.

The invention of the '450 Patent changed that.  The '450 Patent provided a method and apparatus for releasing the full potential of pay-per-click advertising by providing advertisers tools for evaluating, managing, and optimizing an exponentially greater number of bids.  Further, PSET anticipated eliminating the need for an advertiser to monitor bid prices and other data with a system that, once authorized by the advertiser, monitors bids, identifies optimization opportunities, and implements changes, consistent with the advertiser's authorization and without subsequent advertiser intervention.  This latter concept is embodied in the claims that are the subject of the instant motion.

Contrary to Defendants' assertions, the Konia patent does not describe the exact same invention of the '450 patent.  Konia is not directed to a method of managing keyword offers in a pay-per-click search engine.  Rather, Konia is directed to determining continuing priority of a service in an auction; and, thus, in the case of keywords, Konia looks at bid **rankings**, not keyword offers of others, and thus is incapable of identifying optimization opportunities and implementing changes to achieve those opportunities as does the invention of the '450

patent.  Although Konia was not cited by the Examiner during prosecution of the '450 patent

because it did not issue until a year <u>after</u> the '450 patent issued, it was cited to the Examiner

in a continuation application (Plt. Ex. 2), and the Examiner did not apply it in his next action.

(Plt. Ex. 3).


### III.     RESPONSE TO STATEMENT OF UNDISPUTED FACTS

####     A.     GoTo.com's On-Line Auction for Search Results

        1.     Not disputed.

        2.     Not disputed.

        3.     Not disputed as written, but Figure 7 of Davis illustrates that prior to

the invention of the '450 Patent, information on what competitors were bidding for

clickthroughs on a given keyword was not accessible in the bidding area and could only be

viewed one keyword at a time from the search engine's public area, e.g., "zip drives."  In

Figure 7 of Davis, the advertiser appearing in the third position for the keyword "zip drives",

is bidding $0.06 for a clickthrough, but the advertiser in the fourth position is bidding only

$0.02 for a clickthrough.  The third position advertiser could reduce its offered bid to $0.03

and achieve the same result, remaining in the third position.  When highly-desired keywords

are involved, the bid gaps were often dollars instead of pennies.  These inefficiencies had a

strangling effect on advertisers' use of the pay-per-click model.


####     B.     The Asserted Claims of the '450 Patent

        4.     Disputed.  There is nothing in the '450 patent that limits use of the

invention to GoTo.com or to prior art paid search engines.

5.     The '450 Patent's description of the problem with then-existing paid search engines like GoTo.com is more fully set out at column 1, line 56 through column 2, line 24:

> As paid search engines become increasingly popular, the rate of change of bid amounts at those sites has increased, a consequence of competition for desirable keywords and relative positions in those keywords. To foster competition, paid search engines have provided facilities for bidders to monitor certain statistics, such as a daily count of "hits" on particular keywords, and reports of current bids on a given single keyword. However, paid search engines have not, to date, made such competitive information readily accessible. For example, a bidder can only view current bid positions of one keyword at a time, and has no mechanism for quickly identifying large gaps in bid amounts indicative of an opportunity for bid optimization. For a content provider managing tens or hundreds of keyword bids, the burden of evaluating each keyword individually can be substantial. The apparent reason for this situation is that paid search engines do not wish to incur the lost revenue that would result were the content providers able to fully optimize their bidding strategies, e.g., by quickly determining whether any current bids for keywords of interests can be lowered, without any or any important change in ranking relative to other bidders. A non-optimal bid on any given keyword, meaning any bid with a difference of greater than one cent from the next lower bid, represents consumer surplus captured by the paid search engine, which the search engine sponsor does not wish to relinquish.
>    To date, few services have been introduced to aid in bidding on paid search engine keywords. One such service accumulates generic statistics on the bid ranges for particular positions (e.g., 6, 12, etc.) for particular keywords at a paid search engine. This data is useful in selecting keywords on which to bid, but does not provide any assistance in managing bids that have been placed to ensure those bids are optimized and that a desired position has been maintained as competitors change their bids for the selected keywords.

6.     The '450 Patent's description of its solutions to the problems is more fully set out in the SUMMARY OF THE INVENTION beginning at column 2, line 26 and extending to column 3, line 13.  One aspect of the '450 patent is the automatic optimization of bids in a manner that frees the subscriber from the burden of resubmitting bids with each new optimization opportunity as described at column 5, line 60 through column 6, line 4.

4

7. Not disputed.

8. Defendants have incorrectly quoted language of Claim 12 because the Defendants did not incorporate the correction of the PTO's error by the certificate of correction. In the third line, the claim properly reads "located using the keyword within said search engine" rather than "located upon the keyword within said search engine." Further, as set forth in its opening brief on claim construction, PSET disputes any implication that the step delineated as [a] by Defendants must be repeated each time before steps [b] and [c].

9. Not disputed.

**C.   The Prosecution History of the '450 Patent**

10. During prosecution, all claims were rejected on the basis of the Davis patent, Defendants Ex. 6. A Response to Office Action was filed on June 21, 2005 (Defendants Ex. 7) in which the claims were amended. The Response included a Remarks section beginning on page 7 in which the reasons why the claims were patentable over Davis were set forth. Among other things, the Applicants noted that the Davis patent filed by GoTo.com had no mechanism for quickly identifying large bid gaps and amounts indicative of an opportunity for bid optimization and that the information provided by Davis was highly deficient. Applicants noted that the display of Figure 7 of Davis presented only bid amounts for the keyword "zip drives"; there was no information regarding bid amounts on the other keywords; to get such information one would have to enter a different keyword to obtain the rankings for it. (*Id.* at 8-9). Applicants further noted that a non-optimal bid on any given keyword, meaning any bid with a difference of greater than one cent from the next lower bid, represented consumer surplus captured by the paid search engine, which the search engine

sponsor did not wish to relinquish.  (*Id.* at 10). The invention of the '450 patent permitted the management of hundreds of keywords and the quick and efficient identification of bid optimization opportunities that permitted bidders to minimize their costs.  Specifically with respect to claim 12, the Applicants noted that Davis made no mention of changing bids based upon a pre-authorization.  (*Id.* at 15).

11.     In the Office Action dated September 1, 2005 (Defendants Ex. 8), the Examiner rejected all claims as obvious over the combination of Davis and Fisher. Specifically with respect to claim 12, the Examiner cited the proxy bidding feature of Fisher in an online auction.

12.     In the Response to Office Action dated December 1, 2005 (Defendants Ex.10), the Applicants amended the claims and presented Remarks beginning at page 9 that included that only Davis related to paid search engine bidding.

### D.     The Konia Patent

13.     PSET does not dispute that the title of the Konia patent is "Online Auction Bid Management System and Method" and that the patent issued to Brad S. Konia on May 29, 2007.  PSET disputes that the Konia patent describes a management system and method anything like the '450 Patent and disputes that the Konia patent anticipates the asserted claims of the '450 Patent.  Specifically, nothing in the Konia patent describes or even mentions managing keyword offers in the manner of the '450 patent pay-per-click advertising, and nothing in the Konia patent permits the management of hundreds of keywords in a pay-per-click search engine and the quick and efficient identification of large

6

bid gaps and amounts indicative of opportunities for bid optimization.  (Hochman Decl. ¶¶ 7, 9)

14.     PSET does not dispute that the application that became the Konia patent was filed on January 27, 2000 and that it constitutes prior art under 35 U.S.C. §102(e). Konia was not considered during the prosecution of the '450 Patent because it did not issue until more than a year after the issuance of the '450 Patent.

PSET disputes Defendants' characterization of Konia.  Konia is directed to a method and system for automatically managing an auction for determining continuing relative priority for a service in a system wherein priority is based on the relative value of related bids.  (*See* Abstract; col. 3, l. 6-10).  Thus, Konia describes, for example. submitting bids for preferred golf course tee-off time reservations (col. 5, l.19-22) to achieve a desired or preferred tee-time, submitting bids for premium seats for airline flight reservations such as a seat in the first-class section of a flight between Los Angeles and New York (col. 8, l. 4-7) or premium times on airline flight schedules (col. 8, l. 12-13), maintaining priority for vendors relative priority for selling goods and services to buyers (col. 9, l. 15-24), or changing relative priority in relation to increasing or decreasing inventory of products for sale in an online store.  (col. 11, l. 44-60).  In each case, bidders "bid for position" relative to other bidders to receive relative continuing priority for goods and services.  (col. 11, l. 56-59).

Accordingly, Konia provides a system that periodically but over and over again checks rankings or bid positions and then increments either up or down a bid amount and then determines whether the bidder's desired position or ranking is met. (Hochman Decl. ¶ 9)  That is, the method checks for whether a first bid ranking exceeds a

7

second bid ranking in an auction for determining continuing priority.  If the first bid rank

does not exceed the second bid rank, the Konia method increments the first bid to a value

whereby the first bid reclaims its rank exceeding the second bid to maintain priority of

service.  *See, e.g.*, Abstract: "The steps of checking and incrementing may be executed a

plurality of times.  The system may pause for a fixed period of time between each series of

steps of checking and incrementing."; col.1, l. 45-53: "The method further comprises

incrementing the first bid to a value exceeding the second bid if the first bid does not exceed

the second bid, thereby causing the relative priority for providing service for the first bidder

to exceed the priority for providing service to the second bidder.  The steps of checking and

incrementing may be executed a plurality of times.  The system may pause for a fixed period

of time between each series of steps of checking and incrementing."; col. 3, l.  49-52: "The

online bid management system 102 is further programmed to check and increment the bids a

plurality of times, pausing for a fixed period of time between each checking and

incrementing."

PSET disputes that Konia cures the deficiency of the Fisher reference

by providing what Defendants characterize as an automated bid management system meant

to be used expressly with a paid search engine such as GoTo.com.  There is no such express

teaching in Konia.  Konia nowhere mentions pay-per-click advertising and does not

distinguish GoTo.com from other types of advertising such as banner ads where the bidding

and subsequent charges are incurred for merely displaying a given advertiser's link on a

webpage.  Konia does describe Internet search engine key phrases as one type of goods (like

golf tee-off times) that can be bid on for continuing priority of service.  But Konia is

concerned only with the bidder's relative position of priority, not the bids of other parties.

See Konia, col. 1, l. 27-29 (emphasis added): "There exists a need for a system that monitors the current **rankings** in auctions and automatically adjusts its bids according to the rules defined by its user." (Hochman Decl. ¶ 8) Konia is strictly a "bid for position" system that periodically checks and increments the bidder's bid to cause the first bid to exceed the second bid, thereby causing the relative continuing priority for providing service for the first bidder to exceed the priority for providing service to the second bidder. (Hochman Decl. ¶¶ 9, 10)

15.     Konia does reference GoTo.com at column 1, l.10-22, but only as an example of what Konia calls a continuous auction. ("The search engine found at GOTO.COM by Goto.com of Pasadena, Calif. is an exemplary continuous auction."). However, Konia does not expressly link his bid for position system to GoTo.com. (Hochman Decl. ¶ 6) Again, Konia makes no mention whatever of pay-per-click keyword bidding. (Hochman Decl. ¶ 7)

16.     Konia goes on to state: "As these **and other types of continuous auctions** become more common in many areas of commerce, it will become more difficult for bidders to monitor bids in several different auctions." (col.1, l. 23-26, emphasis added). Konia thus clearly recognized the difficulty in monitoring **bids** in several different continuous auctions. Indeed, Konia recognizes the increasing difficulty in monitoring bids as continuous auctions become more common in many areas of commerce. (Hochman Decl. ¶ 8)

17.     Konia thus teaches that he did *not* want to monitor **bids**. To the contrary, Konia wanted to monitor **rankings** in auctions because monitoring bids was too difficult. Col. 1, l. 27-29 (emphasis added): "There exists a need for a system that monitors

the current **rankings** in auctions and automatically adjusts its bids according to the rules

defined by its user."  (Hochman Decl. ¶ 8)

        18.     PSET disputes the Defendants' description of Konia as it relates to

Figure 2 and supporting text.  PSET incorporates in response the declaration of Jonathan

Hochman submitted as PSET Exhibit 1, as if fully set out herein.

        19.     PSET disputes the description of Konia as it relates to claim 12 of the

'450 Patent.  PSET incorporates in response the Declaration of Jonathan Hochman submitted

as PSET Exhibit 1, as if fully set out herein.  PSET specifically disputes the Defendants'

conclusion of anticipation of claim 12 for the reasons set forth in the Hochman Declaration.

        20.     PSET disputes the description of Konia as it relates to claims 13, 15,

18 and 22 of the '450 Patent.  PSET incorporates in response the Declaration of Jonathan

Hochman submitted as PSET Exhibit 1, as if fully set out herein.  PSET specifically disputes

any inference that claims 13, 15, 18 and 22 are anticipated by Konia for the reasons set forth

in the Hochman Declaration.


## IV.    ARGUMENT

### A.    The Legal Standard for the Grant of Summary Judgment of Invalidity Based on Anticipation Requires Both the Absence of a Genuine Issue of Material Fact and Proof of Invalidity by Clear and Convincing Evidence

"Summary judgment is only appropriate if there are no genuine issues of material fact

and the movant is entitled to judgment as a matter of law."  *Zenith Elec. Corp. v. PDI Comm.*

*Sys., Inc.*, 522 F.3d 1348, 1355 (Fed. Cir. 2008); *see also* FED. R. CIV. P. 56(c).  As the

moving parties, Defendants bear the burden of showing an absence of a genuine issue of

material fact. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 2009 U.S. App. LEXIS

20622, at *7 (Fed. Cir. Sept. 16, 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A fact is material if its resolution will affect the outcome of the case. *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

In their current motion, Defendants assert that certain claims of the '450 Patent are invalid as anticipated under 35 U.S.C. § 102(e). Because issued patents are presumed to be valid, parties raising the affirmative defense of invalidity bear the burden of proving facts that support a conclusion of invalidity by clear and convincing evidence. *See Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1378 (Fed. Cir. 2005); *see also* 35 U.S.C. § 282. This standard of proof also applies in the summary judgment context. *See Invitrogen Corp. v. Biocrest Mfg., LP*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). Anticipation is a question of fact and granting summary judgment on this basis is only proper if no reasonable jury could find that the patent is not anticipated. *See Zenith*, 522 F.3d at 1357; *Shatterproof Glass Corp. v. Libby-Owens Ford Co.*, 758 F.2d 613 (Fed. Cir. 1985) ("Anticipation under 35 U.S.C. §102 requires that there be an identity of invention, which presents a question of fact for the jury."). A party asserting anticipation shoulders "an especially heavy burden." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004).

Therefore, in order for the Court to grant Defendants' motion for summary judgment, Defendants must demonstrate that there is "no reasonable view of material facts, with cognizance of the substantive evidentiary standards, whereby a reasonable jury could find for [PSET]." *Hutchins v. Zoll Med. Corp*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) (citing *Anderson,* 477 U.S. at 255). As explained below, Defendants have failed to carry their burden.

**B.    Anticipation Requires Proof That a Single Prior Art Reference**
**Discloses Each and Every Element Set Forth in the Patent Claim**

"A [patent] claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *SRI Int'l, Inc. v. Internet Security Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008)(quoting *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987)).  An anticipating reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'"  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)(quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).   "The dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference." *Akamai Techs. v. Cable & Wireless Internet Servs.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) (quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003)).

To establish inherency, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).  "Inherency, however, may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id.* at 1269.

    **C.**    **The Defendants Have Failed to Adequately Support Their Argument of Anticipation with Expert Testimony Regarding Whether A Person of Ordinary Skill in the Art Would Consider the '450 Patent Anticipated by the Konia Patent**

Defendants' motion for summary judgment of invalidity is deficient for lack of reliance on expert testimony. The Federal Circuit has:

> consistently explained what is necessary to show anticipation by a given reference: Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.

*Koito Mfg Co. Ltd., v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 & n.4 (Fed. Cir. 2004) (quoting *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-1316 (Fed. Cir. 2002)).

Expert testimony may not be necessary when "the references and [] invention are easily understandable." *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984). However, where, as here, the technology at issue is complex and not easily understandable to the lay person, expert testimony is essential. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004); *see also Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232-33 (3rd Cir. 1986) ("expert testimony is essential to even the most fundamental understanding of" computer programs that were the subject of the copyright infringement case).

Understanding Konia's description of his "bid for position" system and Defendants' assertion of its purported application to the '450 patent requires expert explanatory testimony. *See Koito*, 381 F.3d at 1152 & n. 4 (holding *Union Carbide* is inapplicable where the allegedly anticipatory patent is not easily understandable). Defendants have failed to offer any expert testimony in this regard, and their motion is deficient on this ground alone.

**D.      Independent Claim 12 of the '450 Patent Is Not Anticipated by Konia**

      1.      **Konia does not disclose "[a] method of managing an offeror's offer for a keyword made to a search engine, said offer identifying an amount said offeror will pay upon a searcher's use of an offeror-supplied reference located upon the keyword within said search engine."**

Mindful that anticipation requires that each element of a claim be present in a single prior art reference, it is not necessary to discuss each limitation of independent claim 12.  It is sufficient to defeat a motion for summary judgment of invalidity based on anticipation if the prior art reference asserted fails to disclose even one limitation of the claim.

The claim language of the '450 patent quoted above describes managing keyword offers in a pay-per-click search engine.[1] Konia makes no reference whatever to managing keyword offers in a pay-per-click search engine.  (Hochman Decl. ¶ 7) The Defendants attempt to overcome this deficiency of Konia by referencing Konia's description of the GoTo.com search engine as "an exemplary continuous auction."  But Konia does not describe his method as shown in Figure 2 with respect to GoTo.com or any pay-per-click search engine.  Moreover, Konia does not disclose a method of managing an advertiser's offer for a keyword made to a pay-per-click search engine.  (Hochman Decl. ¶ 6)  Konia manages an advertiser's position of relative priority for providing an ongoing service by bidders.  See, e.g., Konia Abstract.

Accordingly, Konia lacks this element of claim 12 and does not anticipate claim 12.  (Hochman Decl. ¶ 24)

---

[1] The Defendants state that they are adopting Plaintiff's proposed claim constructions for purposes of this motion.  (Defendants Motion at page 1, footnote 1.)  Plaintiffs proposed construction is that this language references a pay-per-click search engine.  Joint Claim Construction and Prehearing Statement (Doc. 78, Exhibit A, page 1-2.)

2.      **Konia does not disclose "monitoring keyword offers at one
        or more Internet search engines to identify a change in said
        offeror's offer of interest to said offeror."**

Independent claim 12 requires among other things the step of "monitoring keyword

offers at one or more Internet search engines to identify a change in said offeror's offer of

interest to said offeror." Konia does not do this.  (Hochman Decl. ¶ 25) As Defendants

correctly observe, Konia discloses a method that "monitors the current rankings in auctions

and automatically adjust its bids according to the rules defined by each user."  (Konia, 1:27-

30).  **Konia monitors rankings, not "keyword offers."** -- a key distinction that the

Defendants acknowledge but attempt to conflate in their Motion.  (See Defendants Motion at

11-12) This distinction, however, makes the disclosed methods of the two patents

fundamentally different.

Figure 2 of the Konia patent is a flow diagram illustrating the method performed by

the Konia online bid management system.  (Konia, 4:19-21)  Figure 2 is the only flow

diagram in the Konia patent that illustrates an online bid management system.  As the

Hochman Declaration at ¶¶ 11-22 makes clear, Figure 2 of Konia discloses a loop that begins

with step 206 in which the system loops through each term that the bidder has  bid upon in

the current search engine.  Step 208 of Konia's method checks to determine whether the

bidder's desired position is met for the particular web page and term: "Position lower than

desired?"  In fact, Konia explicitly reiterates this method at col. 4, l. 50-52 (emphasis added):

"The system checks for whether the **bidder's desired position is met** for the particular web

page and term, step 208."

Defendants rely upon a single sentence in Konia's detailed description as support for their contention that Konia does monitor offers: "For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page." (col. 4, l. 49-51). One of the ordinary skill in the art would understand this statement as disclosing that Konia's method checks the relative ranking of the advertiser's webpage rather than monitoring keyword offers to identify a change. (Hochman Decl. ¶¶ 9-10) As disclosed in Figure 2, Konia's method operates by taking a term that is bid upon at step 206 and the position that the advertiser has stated it desires, and then simply checking at step 208 whether the current position for the term is lower than desired. If it is, the system automatically increments the bid upward some incremental amount (Konia does not give any examples of the incremental amounts) at step 212. The system then rechecks to see if the desired position has been achieved. If not, on the next cycle, the bid is again incremented upward, and checked again at step 214 to see if the desired position has been achieved at step 216. The process continues indefinitely periodically checking and incrementing the bid until the desired position is achieved. See Konia patent, Abstract; col. 1, l. 49-51; col. 2, l. 1-3; col. 3, l. 49-52; col. 4, l. 63-64. Konia executes this entire process without ever monitoring the actual bids of other advertisers on the term to identify a potential change.

No step in Figure 2 references checking "for whether the bidder's bid exceeds all other bids in the auction" as referenced at Konia, 4:49-51. Rather, Konia only checks for position or ranking, and a #1 ranking indicates that the bid has exceeded all other bids in the auction. Again, Konia is explicit that his method purportedly solves the "problem" with

"continuous auctions" by monitoring rankings and not bids: "There exists a need for a system that monitors the current rankings in auctions . . . ." (Konia, 1:23-28)

A review of the remainder of Konia's method reinforces this conclusion.  For example, Konia states that another example of his method allows a bidder to choose a position such as fourth in the results listing.  "If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210." (Konia, 4:54-59).  Thus, once the system determines that the proper position has been achieved, it reverses its actions and begins decrementing the bid periodically checking whether the term is still in the desired position.  This step only requires the method to look at the relative ranking of the advertiser's bid position, rather than to monitor the keyword offers of others.

Furthermore, as the Hochman Declaration explains, Konia's method utterly fails to disclose a key element of the '450 patents method: the optimization of keyword offers. (Hochman  Decl. ¶¶ 17-20, 22)  Konia's method is extremely inefficient and does **not permit** the identification of optimization opportunities, such as gaps in keyword offers.  Therefore, Konia cannot identify a change in the advertiser's offer of interest to the advertiser whereby optimization opportunities can be identified and applied.  (Hochman Decl. ¶¶ 17-20, 22) As just one example, if an advertiser desired to be in position 3, Konia's system would incrementally increase the bid amount until the advertiser moved out of position 4 and into position 3.  If the person in position 4 then dropped out, the Konia system would not identify this when it next rechecked the bid of the advertiser.  It would only determine that the advertiser continued to be in position 3 and would begin to increment his bid downward

17

through a series of steps of checking and incrementing, despite the fact that a sizable gap between position 3 and position 4 has opened.  This incremental reduction will cause the bidder to overpay for the position until the series of incremental steps, perform perhaps over a period of days, reduce the advertisers bid to the new the minimum amount required to win position 3.  (Hochman Decl. ¶ 21)

Still further, when an advertiser is in the desired position with the bid that is the minimum amount required to maintain that position, Konia's method will actually make a change in the advertisers bid that will cause the advertiser to lose the desired position.  It will automatically decrease the advertisers bid below that require to win the desired position and, in so doing, cause it to drop out of the desired position.  Accordingly, at the bid optimization point, Konia will actually make a change that results in an *undesired outcome* 50% of the time.  (Hochman Decl. ¶ 17)

These disclosures make clear that, as detailed in the Hochman Declaration, Konia does not monitor keyword offers to identify a change that can be made in the keyword offer, as claimed in claim 12.  (Hochman Decl. ¶ 23) Accordingly, Konia lacks this element of claim 12 and does not anticipate claim 12.  (Hochman  Decl. ¶ 25)

>3.     **Konia does not disclose "implementing said change in said offeror's offer on behalf of said offeror based upon the previously received authorization without further intervention of said offeror."**

Since, as described above, Konia does not monitor keyword offers to identify a change in the offeror's offer of interest to the offeror, by definition, Konia can not implement "said change" in the offeror's offer without further intervention of the offeror.  (Hochman Decl. ¶ 25) As stated, Konia does nothing more than periodically check the advertiser's

position and then periodically increment the advertiser's bid upward if the advertiser is not in the desired position and periodically increment the bid downward once the advertiser won the desired position.  (Hochman Decl. ¶ 26-27) Defendants' argument ignores entirely step 208 of Konia, which looks only to determine whether the position is lower than desired, and does not describe monitoring keyword offers, or identifying a change based upon monitored offers.

### E.       Konia Does Not Anticipate Dependent Claim 13

Claim 13 depends from claim 12 and requires "wherein the identified change creates a differential in offers meeting certain criteria."  First, it is a fundamental principle of patent law that if the independent claim from which the depending claim depends is valid, then the depending claim is likewise valid.  Second, as discussed above with respect to independent claim 12, Konia does not monitor keyword offers to identify a change in the offeror's offer of interest to the offeror.  (Hochman Decl. ¶ 23) Accordingly, since Konia identifies no such change in the offeror's offer, Konia cannot identify any such change creating a differential in offers meeting certain criteria.  (Hochman Decl. ¶¶ 28-29)   Rather, Konia simply increments[2] the offer downward a predetermined amount until the advertiser falls out of his desired position.  Konia never knows what the other offers are, only the relative position of the advertiser.  (Hochman Decl. ¶ 29)  Claim 13 is not anticipated.

---

[2] Konia emphasizes that the bid adjustment is by fixed, unanalyzed steps up and down.  For example, he uses the term "increment" to describe the method by which bids may be increased or decreased.  To "increment" is to make "one of a series of regular consecutive additions of like or proportional size or value."  Webster's Third New International Dictionary, Unabridged, Merriam-Webster, 2002 (http://unabridged.merriam-webster.com.

### F.      Konia Does Not Anticipate Dependent Claim 15

Claim 15 depends from claim 14 which in turn depends from claim 13.  Claim 14 requires "wherein said criteria identify differentials in offers characteristic of optimization opportunities."  Claim 15 requires that the "criteria identify differentials between offers larger than a minimum currency amount."  As with dependent claim 13, since claim 12 is not anticipated by Konia, claim 15 likewise cannot be anticipated.  Further, as the Hochman Declaration makes clear, Konia does not disclose and does not contemplate utilizing any criteria identifying "differentials in **offers** characteristic of optimization opportunities." (emphasis added)   (Hochman Decl. ¶ 31) Konia only discloses and is capable only of determining the relative position of an advertiser's bid and then incrementally either increasing or decreasing the bid to achieve a desired position or to hold a desired position. As the Hochman Declaration also makes clear, Konia operates in a non-optimal manner most times.

Defendants relay upon a single sentence in Konia that "[i]f the system finds that the bidder has achieve the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210."  However, this is not a disclosure of the subject matter of claim 15.  Konia merely periodically checks and increments the advertiser's bid to obtain a desired position.  (Hochman Decl. ¶ 31) Accordingly, claim 15 is not anticipated.

### G.    Konia Does Not Anticipate Claim 18

Claim 18 depends from claim 12, and requires that the "change" identified in claim 12 comprise "decreasing an offer to reduce the gap between the offeror's offer and a lower offer." Since claim 12 is not anticipated by Konia, claim 18 cannot be anticipated. Further, Konia does not disclose identifying a change in the offeror's offer comprising decreasing an offer to reduce the gap between the offeror's offer and the lower offer. Defendants assert that Konia's reducing the bid to a minimum amount in step 210 to achieve a desired position constitutes the identification of a change. However, it does not. Konia never identifies a "change", but only periodically checks for the position of the advertiser. If the advertiser is in the desired position, Konia then simply begins the steps of checking and incrementing to reduce the advertiser's bid. No change in the advertiser's bid is identified by monitoring keyword offers. Konia only determines whether the advertiser's bid is in the position desired. (Hochman Decl. ¶ 32)

### H.    Konia Does Not Anticipate Claim 22

Claim 22 depends from claim 12 and requires that the "change is generated in response to offered prices and other data." As discussed above with respect to claim 12, Konia does not disclose "monitoring keyword offers . . . to identify a change in said offeror's offer of interest to said offeror." Since Konia does not anticipate claim 12, it cannot anticipate claim 22.

Defendants argue that Konia monitors competing bids and bid positions. This is not correct. Konia looks only at the position of the advertiser's bid to determine whether or not the desired position has been achieved. (Hochman Decl. ¶ 10) Defendants further argue that

Konia discloses that the change in the offeror's offer is generated in response to offered bid amounts, bid minimums or maximums and desired position and that the latter to constitute "other data." First, the Defendants have stated that for purposes as of this motion, they are accepting Plaintiff's proposed claim constructions. Defendants' Motion, page 1 n.1. However, PSET's proposed construction of "other data" is a "statistic." Bid minimums and maximums and desired position are not statistics and thus do not constitute "other data" as used in claim 22. (Hochman Decl. ¶ 35) Finally, in Konia, the change is not generated in response to "offered prices." To the contrary, Konia only looks at the advertiser's relative position. Any change in an advertiser's bid is made solely based on achieving a relative position. (*Id.*)

I. **There Exists At Least a Genuine Issue of Material Fact As to What Konia Teaches And Whether Konia Is At All Relevant to the Claims of the '450 Patent**

As already noted, Defendants have offered no expert testimony regarding the teachings of the Konia patent. They offer only argument of counsel. Defendants motion is deficient on this ground alone. Plaintiff has submitted an expert declaration that analyzes Konia's disclosure and states that Konia is directed solely to determining position or ranking and not keyword offers of others and, therefore, has no ability or mechanism for quickly identifying large bid gaps and amounts indicative of an opportunity for bid optimization. As a declaration points out, the bids in Konia are almost always non-optimal in that the bidder is overpaying for his position. The Defendants may dispute this point; but, if so, the determination of what Konia teaches one of ordinary skill in the art is a question for the jury. *Shatterproof Glass Corp. v. Libby-Owens Ford Co.*, 758 F.2d 613 (Fed. Cir. 1985)

22

("Anticipation under 35 U.S.C. § 102 requires that there be an identity of invention, which presents a question of fact for the jury.").


## V.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the motion for summary judgment be denied.


PAID SEARCH ENGINE TOOLS, LLC


Dated:  December 4, 2009                /s/ J. Robert Chambers, by permission ELD
                                        S. Calvin Capshaw
                                        State Bar No. 0378390
                                        Elizabeth L. DeRieux
                                        State Bar No. 24053063
                                        CAPSHAW DeRIEUX, LLP
                                        1127 Judson Road, Suite 200
                                        P.O. Box 3999 75606-3999
                                        Longview, TX  75601-5157
                                        (903) 236-9800 (Telephone)
                                        (903) 236-8787 (Facsimile)

J. Robert Chambers (admitted *pro hac vice*)
bchambers@whepatent.com
P. Andrew Blatt
dblatt@whepatent.com
John Paul Davis
jdavis@whepatent.com
Brett A. Schatz
bschatz@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower
441 Vine Street
Cincinnati, OH  45202-2917
(513) 241-2324 (Telephone)
(513) 241-5960 (Facsimile)

**Attorneys for Plaintiff**
**Paid Search Engine Tools, LLC**

OF COUNSEL:

Gregory M. Utter (admitted *pro hac vice*)
W. Jeffrey Sefton (admitted *pro hac vice*)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St.
Suite 1400
Cincinnati, OH  45202
(513) 579-6540 (Telephone)
(513) 579-6457 (Facsimile)
gmutter@kmklaw.com
jsefton@kmklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 4th day of December, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Elizabeth L. DeRieux
Elizabeth L. DeRieux