**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PAID SEARCH ENGINE TOOLS, LLC** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No: 2:07-CV-403 (DF/CE)** |
| | § | |
| **v.** | § | |
| | § | |
| **YAHOO! INC.,** *et al*. | § | **Jury Requested** |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF PAID SEARCH ENGINE TOOLS LLC'S**
**RULE 37(A) MOTION TO COMPEL THE DEPOSITION TESTIMONY OF**
**ERIC VEACH, ERIC SCHMIDT, SALAR KAMANGAR, AND SUSAN WOJCICKI**

## I.      INTRODUCTION

The background of this case has been well-documented for the Court in the parties' Claim Construction Briefs and Plaintiff Paid Search Engine Tools' LLC ("PSET") two previous Motions to Compel. In brief, the invention disclosed and claimed by the '450 Patent describes a method and apparatus for managing, and optimizing bids on a significant number of target keywords for online "pay-per-click" advertising systems that was first developed by PSET in early 2000. PSET introduced its invention commercially in July 2000, and disclosed its method to GoTo.com, which at the time was the leading pay-per-click advertising search engine. At the same time, Defendant Google Inc. ("Google") was also attempting to monetize on-line searching, including possible implementation of pay-per-click advertising. The system that Google ultimately implemented – upon which it has reaped billions of dollars in revenue – infringes the method disclosed and claimed in the '450 Patent.

On February 19, 2010, PSET served notices of deposition on each of the following Google employees: Eric Veach, Eric Schmidt, Salar Kamangar, and Susan Wojcicki. (*See* Notices of Deposition, attached hereto as Exhibit A). Based on information that it has obtained in this case thus far, PSET believes that Veach, Schmidt, Kamangar, and Wojcicki were all intimately involved in the design, development, and implementation of the accused instrumentality, Google's AdWords program, at the time of the invention of the '450 Patent. Due to their direct role in the development of AdWords, these four individuals have relevant information that bears on the claims and defenses arising in this case.

However, Google flatly refuses to make any of the above-named individuals available for deposition. In a letter dated February 23, 2010, Google objected to the depositions of Veach, Schmidt, Kamangar, and Wojcicki asserting that each of these individuals is a "high-level

executive" whose deposition may only be taken if they had "personal unique knowledge that is relevant to the case," and if Plaintiff has first attempted to "obtain the information through less burdensome means of discovery." (*See* Letter from O'Brien to Sefton, Feb. 23, 2010, attached hereto as Exhibit B). This argument is misplaced. While Veach, Schmidt, Kamangar, and Wojcicki may now be more removed from many aspects of Google's operations, each played an active role in the initial design, development, and implementation of the current version of AdWords. Veach and Kamanger designed AdWords. Schmidt oversaw and approved every move. And Wojcicki, in whose house Google began, moved through the ranks from marketing, developing and now supervising product managers who develop AdWords. Each has personal knowledge of information relevant to this case, and PSET is entitled to depose them.

Despite PSET's good faith efforts to resolve this dispute – including the exchange of letters, e-mail correspondence, telephone conferences, and an in-person meet and confer conducted on March 16, 2010 – Google is intransigent. Therefore, pursuant to Federal Rule of Civil Procedure 37(a), PSET seeks this Court's intervention to compel Google to make Eric Veach, Eric Schmidt, Salar Kamangar, and Susan Wojcicki available for deposition.

## II.   APPLICABLE LEGAL STANDARD

The Federal Rules of Civil Procedure expressly permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED.R.CIV.P. 26(b)(1). As the Court is aware, "[r]elevancy for the purposes of Rule 26 is broadly construed." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 132 (E.D. Tex. 2003). "In a civil case . . . a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Degen v. United States*, 517 U.S.

820, 825-26 (1996). The scope of discovery lies in the sound discretion of the trial court. *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977).

Rule 30 of the Federal Rules of Civil Procedure governs the taking of oral depositions and permits a party to "depose any person, including a party, without leave of court . . . ." FED.R.CIV.P. 30(a)(1). Depositions play "a vital role in the preparation for trial." *Dollar,* 561 F.2d at 616. Accordingly, the deposition-discovery rules are to be accorded a broad and liberal treatment. *Id.* at 616 (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "[f]ederal courts have, in fact, permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant to the case." *Gauthier v. Union Pacific Railroad Co.*, C.A. No. 1:07-cv-12, 2008 U.S. Dist. Lexis 47199, at *9 (E.D. Tex. June 18, 2008).

Through this Motion, PSET seeks to depose witnesses with information relevant to the claims and defenses arising in this case. Generally, when the discovery sought is relevant, the party resisting discovery has the burden to show why the discovery is unwarranted. *See Seoul Semiconductor Co. v. NICHIA Corp.*, 590 F. Supp. 2d 832, 834 (E.D. Tex. 2008)(citing *United States v. Newell*, 315 F.3d 510, 535 (5th Cir. 2002)). Google is unable to carry this burden.

## III.    ARGUMENT

With each of the deposition notices to Google employees Eric Veach, Eric Schmidt, Salar Kamangar, and Susan Wojcicki, PSET seeks to depose individuals within Google's organization that possess first-hand knowledge of the design, development, and implementation of AdWords prior to its launch and for a short period thereafter, *i.e.,* between the years 2000 and 2003. Upon information obtained thus far in this litigation, PSET believes that each played a direct role in developing Google's infringing AdWords, and therefore are appropriate individuals to depose.

Despite Google's assertion to the contrary, these individuals are not shielded from deposition simply by virtue of their titles within the company.

In its letter of February 23, 2010, Google cites to *Gauthier v. Union Pacific Railroad Co.*, 2008 U.S. Dist. Lexis 47199 (E.D. Tex. June 18, 2008) and *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991), as authority supporting its refusal to make each of its "high-level" executives discussed in this motion available for deposition. However, these cases do not support Google's contention. (*See* Exhibit B, p. 2). *Gauthier* involved a train-crossing accident in which a Union Pacific train struck a car and killed its driver. Plaintiffs sought to depose Union Pacific's Senior Vice President of Law and General Counsel, the former CEO of Union Pacific, now retired, the current CEO and an Executive Vice President. All four submitted affidavits stating that they did not have first-hand personal knowledge of the accident at issue in the lawsuit. Plaintiffs countered that they sought information regarding the executives' knowledge about Union Pacific policy on crossing safety. The Court rejected the Defendant's application of the "apex doctrine" as applicable to federal courts and held, applying the Federal Rules of Civil Procedure, merely that under the facts of the case, Plaintiffs should first take a Rule 30(b)(6) corporate deposition. Unlike PSET, the Plaintiffs in *Gauthier* sought discovery of information pertaining to Defendant's corporate policy, information that could be obtained in the first instance through a 30(b)(6) deposition.

In *Baine*, Plaintiff sought to depose a corporate Vice President, who had authored a memo regarding a seat belt design, and 18 other employees who received the memo. There, the court limited the number of depositions to three of the 18 recipients of the memo, and required the Plaintiff to depose those three employees prior to seeking to depose the Vice President.

Neither *Gauthier* nor *Baine* shields corporate executives from deposition when they have unique, personal knowledge of the controversy. *See, e.g., Gauthier*, *supra*, at *4. For example, in *HCP Laguna Creek Ca v. Sunrise Senior Living Management, Inc.,* 2010 U. S. Dist. LEXIS 21500 (M.D. Tenn. Mar. 8, 2010), the court refused to quash the deposition of a CEO of a senior living facility on grounds that being party to the conversation at issue, the knowledge of the other, lower-level employees was not an issue. What was at issue was the CEO's recall of that conversation.[1] *See also Unishippers Global Logistics v. DHL Express, Inc.*, 2010 U.S. Dist. Lexis 2686 (D. Utah Jan. 12, 2010)(holding that "high-level" executive should be deposed because of his knowledge of the matter in dispute).

The "apex doctrine" and the authority cited by Google in its letter of February 23, 2010 do not support Google's objection to the deposition of Veach, Kamangar, Schmidt and Wojcicki. These individuals are not merely "high-level" executives far removed from the topics for deposition. Furthermore, PSET is not seeking discovery regarding Google's general corporate policy, nor is it proposing to depose other individuals that will testify with duplicative information. Rather, PSET seeks to depose individuals who possess first-hand knowledge of the subject matter, and who are better able to provide this information than any other Google employee. As is further detailed below, each of the proposed deponents have unique personal knowledge of the subject matter involved in this case. Accordingly, PSET is entitled to discover relevant information from each through oral deposition.

---

[1] Although the court used the reference "apex doctrine" throughout its opinion, it noted that no case in the Sixth Circuit had used that term and proceeded to analyze the facts as to whether or not they would support a motion for protective order under Rule 26(c) or Rule 45(c)(3)(C). *Id.* at * 9 n. 4.

A.    *Eric Veach and Salar Kamangar designed AdWords.*

Google's internal documents state that: "*In 2001 Eric Veach, Salar Kamangar and others designed the AdWords auction model.*" ("Ads System Support for Marginal CPC Bidding," GOOGPS0002651, attached hereto as Exhibit C)(emphasis added). This alone is sufficient to demonstrate that Veach and Kamangar were not only intimately involved in the creation of AdWords, but they were the very individuals who designed AdWords. Further evidence is garnered from a Wire Magazine article, which states:

> After Larry Page and Sergey Brin founded the company in 1998, they channeled their energy into its free search product and left much of the business planning to a 22-year-old Stanford graduate named **Salar Kamangar**, Google's ninth employee. The early assumption was that although ads would be an important source of revenue, licensing search technology and selling servers would be just as lucrative.
>
> \*        \*        \*
>
> But as the business grew, **Kamangar and Veach** decided to price the slots on the side of the page by means of an auction.
>
> \*        \*        \*
>
> The problem with an all-at-once auction, however, was that advertisers might be inclined to lowball their bids to avoid the sucker's trap of paying a huge amount more than the guy just below them on the page. So the Googlers decided that the winner of each auction would pay the amount (plus a penny) of the bid from the advertiser with the next-highest offer. (If Joe bids $10, Alice Bids $9, and Sue bids $6, Joe gets the top slot and pays $9.01. Alice gets the next slot for $6.01, and so on.) Since competitors didn't have to worry about costly overbidding errors, the paradoxical result was that it encouraged higher bids.

("Secret of Googlenomics: Data-Fueled Recipe Brews Profitability," Wired Magazine, dated May 22, 2009, attached hereto as Exhibit D)(emphasis added). The above-described innovation, bid optimization, is what is patented in the '450 Patent and asserted by PSET against Google in this lawsuit. Their deposition testimony regarding how and why they decided to implement PSET's invention into AdWords is extremely pertinent to this case.

7

Further still, Veach and Kamangar are the most knowledgeable Google employees regarding the relevant technology as evidenced by their purported inventorship on Google patent applications of similar technology. Several patent applications have been filed with at least one of these two individuals named as inventors, including but not limited to:

- U.S. Patent Application No. 10/112,654, entitled "METHODS AND APPARATUS FOR ORDERING ADVERTISEMENTS BASED ON PERFORMANCE INFORMATION AND PRICE INFORMATION," filed March 29, 2002 (inventors named: Kamangar, Veach, and Koningstein).

- U.S. Patent Application No. 10/340,542, entitled "AUTOMATED PRICE MAINTENANCE FOR USE WITH A SYSTEM IN WHICH ADVERTISEMENTS ARE RENDERED WITH RELATIVE PREFERENCE BASED ON PERFORMANCE INFORMATION AND PRICE INFORMATION," filed January 10, 2003(inventors named: Veach and Kamangar);

- U.S. Patent Application No. 10/340,543, entitled "AUTOMATED PRICE MAINTENANCE FOR USE WITH A SYSTEM IN WHICH ADVERTISEMENTS ARE RENDERED WITH RELATIVE PREFERENCES," filed January 10, 2003 (inventors named: Veach and Kamangar);

- U.S. Patent Application No. 10/877,790, entitled "COST DISCOUNTING TO PROVIDE DOMINANT PARTICIPATION STRATEGY ARBITRATION FOR ONLINE ADVERTISING AND ARBITRATIONS SUPPORTING OFFERS FROM DIFFERENT COST DISCOUNTING METHODOLOGIES," filed June 25, 2004 (inventors named: Lamping, Shillingsburg and Veach);

(*See* Google Patent Applications, attached hereto as Exhibits E-H, respectively).[2]

These patent applications illustrate Veach and Kamangar's knowledge and direct involvement of Google's design, development, and implementation of technology in the related field of on-line advertising. Their expertise and activity in this area during the approximate time period of the conception of the invention of the '450 Patent indicates that they, above all other

---

[2]     Eric Veach is also a named inventor on: U.S. Patent Nos. 7,349,876 and 7,668,748; and U.S. Patent App. Nos. 10/610,350 and 12/053,579. Salar Kamangar is also a named inventor on U.S. Patent Nos. 7,523,087 and 7,546,625; and U.S. Patent App. No. 12/431,902. Each of these patents and applications pertains to technology in the field relevant to that of the '450 Patent.

Google employees, have information relevant to this case and highlights their appropriateness for deposition.

Google's demand that PSET first attempt to discover relevant information on this issue through arguably less burdensome means or from lower level employees before it deposes Veach and Kamangar has no merit. Google expressly named these two individuals as the designer of AdWords at the time of the invention of the '450 Patent. No one would be more knowledgeable about this topic than Veach and Kamangar as each would have a great deal of information relevant to the claims and defenses involved in this case. Moreover, taking the oral deposition is the most efficient means of discovering the information PSET seeks. *See Kiln Underwriting v. Jesuit High School of New Orleans*, C.A. No. 06-cv-5060, 2008 U.S. Dist. Lexis 83535, at *5 (E.D. La. Sept. 18, 2008)(stating that "courts regard oral depositions as a means preferable to written interrogatories of obtaining discoverable information."). Deposing Eric Veach and Salar Kamangar in this case is clearly warranted.

**B.      *Eric Schmidt oversaw and approved the development of AdWords.***

Google's CEO, Eric Schmidt, directly oversaw and approved the development of AdWords. At the time that AdWords was under development, Schmidt, along with Larry Page and Sergey Brin, was one of the three top officials at Google – then a company of about 200 employees. According to the Wired Magazine article, Schmidt was responsible for hiring Hal Varian, a Stanford economist, who assessed Google's advertising system and reported directly back to Schmidt. (*See* "Secret of Googlenomics: Data-Fueled Recipe Brews Profitability," Wired Magazine, dated May 22, 2009, attached hereto as Exhibit D). Furthermore, Schmidt, along with Brin and Page, expressly gave the approval to implement the changes involved in turning the initial version of AdWords, AdWords Premium, which was not pay-per-click, into the

contemporary version known as AdWords Select, which launched in May 2002, and is pay-per-click. (*See id.*).

Due to his first-hand knowledge of the development of the contemporary version of AdWords, Schmidt is an appropriate deponent in this case. Not only will his knowledge of the design, development, and implementation of AdWords aid in understanding the system for the purposes of PSET's infringement claims, but his unique understanding with respect to *why* Google decided to implement changes in AdWords and *how* it went about doing that is relevant to Google's claims of invalidity due to the obviousness of the invention of the '450 Patent. More particularly, Schmidt's testimony will bear directly on the secondary factors of non-obviousness, including providing evidence of: Google's failed attempts to solve the problem that the '450 Patent was designed to address, any internal Google praise for the invention of the '450 Patent, and evidence of Google's copying the invention described in the '450 Patent.

The Court currently has pending before it PSET's Motion to Compel regarding Google's refusal to produce e-mail and other documents from within Eric Schmidt's files. Accordingly, PSET must rely on publicly available documents such as the Wired Magazine article to support its belief that Eric Schmidt was intimately involved in the development of AdWords.

**C.**     ***Susan Wojcicki has been and continues to be uniquely involved in AdWords' marketing and development.***

Recently, Google brought its so-called top executive, Susan Wojcicki, to Texas as a witness in the litigation styled *Function Media v. Google*, C.A. No. 2:07-cv-279 (E.D. Tex). (*See* Wojcicki Trial Transcript "Wojcicki Tr.," attached hereto as Exhibit J). In *Function Media*, Wojcicki testified regarding her involvement in helping to develop Google from the ground up, stating that the "founders of Google worked out of my house. It was their office; it was their first

10

office; and I lived in the house." (Wojcicki Tr. 41:4-6). Wojcicki began working for Google as its marketing manager. (Wojcicki Tr. 43:21). In 2002, she then moved on to developing Google's advertising products (Wojcicki Tr. 45:20). Currently, Wojcicki manages "about 125 people, and the people I manage are product managers. Product managers are responsible for designing the next generation of products that we have. And my – the product managers on my team are responsible for designing AdWords and AdSense and all our advertising products." (Wojcicki Tr. 36:14-20). Clearly, Ms. Wojcicki has a unique personal knowledge of the development of Google and AdWords like no other employee, save its founders Larry Page and Sergey Brin. Even more clearly is Ms. Wojcicki's unique direct experience with AdWords from its inception to its current developments.

More telling than her history with the company is that Google called Wojcicki as a witness in *Function Media* to testify how AdWords works. For example, she testified to details regarding the accused system: "Because every single time a page is called up, we run a new auction" (Wojcicki Tr. 59:5-6); and "we have a lot of complicated systems that figure out which are the five best ads to serve on this page." (Wojcicki Tr. 60:14-16). Google's attorneys brought Ms. Wojcicki to Texas and put her on the stand in *Function Media* for her knowledge of the development of AdWords, and her ability to explain these complicated systems. These same Google attorneys now refuse to produce her for deposition at her place of business in California. PSET is entitled to the benefit of her unique knowledge regarding this system.

Each of the above individuals possesses unique personal knowledge of AdWords. They are not shielded from deposition by virtue of their current positions within the company. PSET is entitled to discover relevant information from each through oral deposition.

## IV.     CONCLUSION

For the above reasons, PSET requests that the Court grant its motion and compel Google

to produce Eric Veach, Eric Schmidt, Salar Kamangar, and Susan Wojcicki for deposition.

Respectfully submitted,

PAID SEARCH ENGINE TOOLS, LLC

Dated:  March 18, 2010

*/s/ J. Robert Chambers, by permission ELD*
S. Calvin Capshaw, State Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux, State Bar No. 05770585
ederieux@capshawlaw.com
CAPSHAW DERIEUX, LLP
1127 Judson Road, Suite 220
Longview, TX 75601
Telephone:     (903) 236-9800
Facsimile:      (903) 236-8787

J. Robert Chambers (Admitted *pro hac vice*)
bchambers@whepatent.com
Adam G. Pugh (Admitted *pro hac vice*)
apugh@whepatent.com
Paul J. Linden (Admitted pro hac vice)
plinden@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202-2917
Telephone:     (513) 241-2324
Facsimile:      (513) 241-5960

Gregory M. Utter (Admitted *pro hac vice*)
gmutter@kmklaw.com
W. Jeffrey Sefton (Admitted *pro hac vice*)
 jsefton@kmklaw.com
KEATING, MUETHING & KLEKAMP, PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:     (513) 579-6400
Facsimile:      (513) 579-6457

ATTORNEYS FOR PLAINTIFF
PAID SEARCH ENGINE TOOLS LLC

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for the Plaintiff certifies that they have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. Counsel for both PSET and Google participated in an in-person meet and confer conference on March 16, 2010.  Plaintiff's counsel in attendance at that conference included Jeffrey Sefton and  Elizabeth DeRieux.  Defendant's counsel in attendance at that conference included Emily O'Brien and Robert W. Schroeder III. The parties have conclusively reached an impasse regarding the issues set forth above, thereby leaving an open issue for the Court to resolve.


 */s/  J. Robert Chambers by permission ELD*                  */s/  Elizabeth L. DeRieux*
J. Robert Chambers, Esq.                        Elizabeth L. DeRieux, Esq.
Lead Trial Counsel for Plaintiff                Local Trial Counsel for Plaintiff


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 18th day of March, 2010, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


                          */s/ Elizabeth L. DeRieux*
                          Elizabeth L. DeRieux