# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| PAID SEARCH ENGINE TOOLS, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>YAHOO! INC., *et al.*,<br><br>　　　　　　　Defendants. | Case No. 2:07-CV-403<br><br>Chief Judge David Folsom<br><br>FILED UNDER SEAL |

## PLAINTIFF PAID SEARCH ENGINE TOOLS, LLC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

### ORAL ARGUMENT REQUESTED

## I.    **INTRODUCTION**

Respectfully, the Magistrate Judge's July 7, 2010 Report and Recommendation
(Dkt. 172) ("Recommendation") proposing that some of the '450 Patent's claims are
anticipated by U.S. Patent 7,225,151 (the "Konia Patent" or "Konia") is erroneous for
one fundamental reason: It violates Federal Rule of Civil Procedure 56 by ignoring
Plaintiff's *unrebutted* expert testimony to find that no question of fact existed as to
anticipation.   In deciding Defendants' Motion for Summary Judgment (Dkt. 92), the
Magistrate Judge had before him PSET's *unrebutted* expert declaration ("Hochman
Declaration") explaining how a person of ordinary skill in the art would understand the
disclosure of the Konia patent and establishing that this disclosure does not anticipate the
450 patent's claims.  The Defendants proffered no opposing evidence or, for that matter,
evidence of *any* type on this issue.  Instead, they offered only legal argument, leaving this
question of fact resolved in *Plaintiff's* favor or, at the very least, unresolved and a matter
for the jury to decide.  Yet the Recommendation never mentions, much less discusses,
PSET's undisputed evidence.   Rather than construe this exclusive evidence and all
inferences thereto in PSET's favor in determining whether questions of material fact
exist, as required under the Federal Rules, the Recommendation utterly ignored this
testimony and improperly concluded that summary judgment should be granted in favor
of the Defendants on this issue.  Respectfully, on the factual record currently before the
Court, the Court may not substitute its own factfinding for that of the jury.   The
Recommendation is therefore erroneous, and it must be rejected.

A review of the record makes clear that there are, at a minimum, questions as to
what Konia discloses.  Contrary to the Defendants' assertions, Konia does not disclose

monitoring and management of the amounts that advertisers and their competitors are bidding to identify bid changes or disclose identifying differentials in keyword offers or bids to identify bid changes. Instead, Konia only compares the relative ranks of different advertisers to maintain the advertiser's position. While Konia makes an effort to reduce bids to the minimum necessary to maintain a given position, it does so blindly. Konia's method cannot *recognize* when a bid gap exists and make optimization decisions based upon those gaps; in fact, Konia's method can actually *lose* the advertiser's desired position by making inadvisable reductions in an advertiser's bid when no bid gap exists. In short, Konia does not disclose "monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to [an] offeror."

The invention claimed in the '450 patent does not suffer from this shortcoming, as it expressly discloses a different method for keyword bid management: monitoring the *amounts* an advertiser's competitors are offering on keywords to identify changes, such as identifying bid gaps. This provides different and more useful information than Konia's method of monitoring only the advertiser's targeted position. The Recommendation fails to recognize this crucial distinction, which is explained in detail in the *unrebutted* Hochman Declaration. Accordingly, the Recommendation erred in finding that the Konia patent discloses each and every limitation of claims 12, 18, and 22 of the '450 patent.

On the record before the Court, it is simply indisputable that there are questions of fact that may not be resolved by summary judgment. PSET therefore respectfully requests that the Court reject the Recommendation's conclusions that claims 12, 18, and 22, of the '450 patent are invalid as anticipated by Konia, allowing these claims to

proceed to trial.

## II.     BACKGROUND AND PROCEDURAL POSTURE

The invention claimed in the '450 patent provides advertisers with a tool to optimize their use of "pay-per-click" advertising at a paid search engine. In pay-per-click advertising, the paid search engine produces links to Internet users in response to keywords, and an advertiser agrees to pay the search engine each time an Internet user clicks the advertiser's produced link. One of the earliest pay-per-click search engines, Goto.com, ranked links based upon the relative bids that advertisers offered for these "clickthroughs;" the advertiser with the highest bid was ranked first, and other advertisers were listed in decreasing order based upon their respective bids. This system, however, presented advertisers with the possibility that they might dramatically overpay for their clickthroughs relative to other advertisers.

Prior to the invention of the '450 patent, advertisers were required to manage their participation in "pay-per-click" systems manually – keyword by keyword. This required an advertiser to expend a great deal of time and energy in managing bids placed on each keyword it wished to employ, thereby severely limiting the number of keywords that an advertiser could manage effectively.

U.S. Patent No. 7,225,151 (the "Konia Patent") describes a system "for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids." (Konia, Abstract, Claim 1 Preamble) (emphasis added). Among other examples of such systems, such as systems conducting auctions for tee times, Konia expressly identifies Goto.com as one such "auction...where priority is based on the relative value of related bids." (Konia,

1:12-14)  This is crucial to Konia's method, because in such a system, position becomes a proxy for determining the relative values of related bids.  An advertiser can determine that his bid exceeds the bid of another advertiser simply because his advertisement is ranked higher.  Konia can therefore manage the auction for the advertiser – although inefficiently – to determine a priority without knowing the amount of other bids placed.  In short, Konia's method incrementally increases the advertiser's bid until it reaches the desired rank, and then incrementally decreases it automatically until it loses the desired rank, in an ongoing, repeated process.  This process does not involve or require knowledge of other advertiser's bids.  This is not accidental but is instead by design, as Konia discloses that he is attempting to avoid the "difficult[y]" of monitoring bids in such auctions:

> As these and other types of continuous auctions become more common in the area of commerce, it will become more difficult for bidders to monitor bids in several different auctions.  There exists the need for a system that monitors the <u>current rankings in auctions</u> and <u>automatically adjusts its bids</u> according to the rules defined by its user.

(Konia, 1:28-30) (emphasis added).

Because Konia proposes a specific solution (monitoring rankings instead of monitoring bids) for specific types of auctions (those in which "priority is based on the relative value of related bids"), he includes language in each of his claims that limits the application of his method to such auctions.  Konia's claim 1 recites:

> A method for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids, comprising:
>
> receiving bid management data from a first bidder for managing bidding by the first bidder in the auction, the auction having at least two or more positions of priority, the received bid management data including *information for selecting one of the two or more positions of priority than the first bidder wishes to maintain in the auction*;

- 4 -

checking for if a second bidder holds the selected position of priority, and *checking for whether a first bid from the first bidder exceeds a second bid from the second bidder in the auction for determining continuing priority for providing an ongoing service for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent upon whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid;...*

*Bid for Position v. AOL*, 601 F.3d 1311, 1313-14 (Fed. Cir. 2010) (quoting Konia, Claim

1) (emphasis in original).  Konia's claim 11, which is a system claim corresponding to

claim 1, is identical to claim 1 in all material respects and recites:

A system for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids, comprising:

an input device for receiving bid management data from a first bidder for managing bidding by the first bidder in the auction, the auction having at least two or more positions of priority, the received bid management data including *selected one of the two or more positions of priority than the first bidder wishes to maintain in the auction;*

(Konia, 15:4-14) (emphasis added).  Notably, nowhere in the claim language does Konia

disclose that his method *identifies other advertisers' bid amounts* or *calculates*

*differentials of bid amounts*, as does the '450 patent.  If Konia were actually identifying

the actual bid amounts of each advertiser, the rest of the language of the claim requiring a

specific auction where the bids were ranked solely by bid amount, thereby turning

position into a proxy for relative bid amounts, would be absolutely unnecessary and

superfluous.

Konia brought suit against Google and other paid search engines, alleging that

they infringed his claims.  Google moved for summary judgment for noninfringement by

citing the language note, arguing that it required an auction ranking advertisements solely

by bid amount and averring that Google's auction does not rank advertisements solely by

bid amount.[1] The district court agreed and granted Google's motion for summary judgment.

On appeal, Konia did not dispute that in Google's system, unlike Goto.com, advertisements are *not* ranked solely by bid amount but rather ranked in decreasing order by a score called Ad Rank, which is an advertiser's bid multiplied by a quality score determined by Google. The primary issue on appeal was whether the "value" used in the Konia patent by which the bidder's positions of priority were determined could be read to include Ad Rank. Konia contended that it would include Ad Rank and, as a result, AdWords' auction system would fall within the type of auction Konia's method expressly requires. In fact, the Federal Circuit began its analysis by noting the narrow scope of issues and language being considered on appeal:

> Only three clauses in the claims are relevant to this appeal: (1) "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 1) and "selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 11); (2) "wherein the relative position of priority for providing the service for the first bidder is dependent upon whether the value of the first bid exceeds the value of the second bid"; and (3) "the auction for determining continuing priority for providing an ongoing service."

*Bid for Position v. AOL*, 601 F.3d 1311, 1314 (Fed. Cir. 2010). As a result, the Federal Circuit was not considering any other issues, including whether Konia's method disclosed "monitoring bid amounts," on appeal.

The Federal Circuit affirmed. It agreed with Google's argument that the quoted language limited Konia to a system where Konia can determine "whether a first bid from

---

[1] The district court also agreed with other arguments advanced by Google, including that Konia required an auction in which the advertiser selected its desired position and that Google's auction did not generally allow an advertiser to select its position. Instead, Google's auction determines the advertiser's position. *See Bid for Postion*, 601 F.3d at 1315-16.

a first bidder exceeds a second bid from the second bidder" simply by identifying

whether the first bid's position, *i.e.*, placement, is higher in the results:

> In the method of the [Konia] patent, the ultimate placement of an advertisement is purely a function of the relative amounts of the competing advertisers' bids, whereas in adWords, the ultimate placement of an advertisement is dictated by the product of the bid amount and the quality score that adWords assigns.

*Id.* at 1318-19. In such a system, it is "the comparison of the bids (i.e., the bid amounts

submitted by the bidders) that determines the position of priority." *Id.* at 1318. The

Federal Circuit discusses and reiterates this limitation and purpose of the quoted language

numerous times over three pages of the opinion:

> While AdWords with Position Preference allows a bidder to select a specific position of priority, it does not satisfy the limitation of the [Konia] patent that states: "the relative position of priority for providing the service for the first bidder is dependent upon whether the value of the first bid exceeds the value of the second bid."
>
> The district court interpreted the "value" of a bid, as used in the patent, to mean the monetary "amount" of the bid, i.e., the price offered by the bidder. Bid For Position contends that the term "value" includes equivalents of the monetary amount of the bid. Bid for Position further argues that the Quality Score in the AdWords system is obtained simplythrough mechanical conversion of the bid amount (i.e., the Maximum CPC), akin to a currency exchange conversion. Therefore, according to Bid for Position, the "value" of the bid, as that term is used in the [Konia] patent, includes the Ad Rank that results from adjusting the bid by the Quality Score.
>
> The flaw in Bid for Position's argument is that the order of the bidders' bid amounts, arranged according to Maximum CPC, can be entirely different from the order of the bidders' Ad Ranks. If the conversion of bids to Ad Ranks were simply substitutions of equivalent values, the same order of positions would obtain after the conversions. Instead, the application of the Quality Score creates rankings that have no consistent mapping to the original bids.
>
> Bid for Position is also incorrect in arguing for a construction of "value" that is distinct from the amount or price of the bid. The claim language uses the terms "bid" and "value of the bid" interchangeably, such that the two cannot be read to have separate meanings....

The same theme is repeated in several of the other embodiments. In the embodiment relating to an auction for a priority position for a website, the specification states that the system "checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listed the bidder's web page." [Konia] patent, col. 4, ll. 52-55. <u>Thus, it is the comparison of the bids (i.e., the bid amounts submitted by the bidders) that determines the position of priority, not the comparison of a separately determined "value" of the bids, as calculated by the system....</u>

The consistent use of the term "value" throughout the patent thus confirms that the '151 patent does not read on AdWords with Position Preference, which bases the award of priority on something other than a comparison of the bid amounts. The district court therefore correctly entered summary judgment of no literal infringement with respect to AdWords with Position Preference....

We agree that the method recited in the '151 patent, in which the amount of the bidder's bid determines the placement of the advertisement, is substantially different from AdWords, with or without Position Preference. In the method of the '151 patent, the ultimate placement of an advertisement is purely a function of the relative amounts of the competing advertisers' bids, whereas in AdWords the ultimate placement of an advertisement is dictated by the product of the bid amount and the Quality Score that AdWords assigns. Thus, AdWords is not a pure bidding system, such as the system recited in the '151 patent, but instead operates in a quite different manner that enables the bid recipient, i.e., Google, to exercise substantial control over the outcome of the auction. That difference is sufficiently fundamental that we conclude, as did the district court, that a trier of fact could not properly find the AdWords system to be equivalent to the system recited in the '151 patent

*Id.* at 1317-19 (emphasis added). Simply put, the Federal Circuit only decided what kind of auction Konia required, which was the primary issue before it. It never addressed or considered how Konia's method as described in his specification and drawings, particularly Figure 2, actually operated.

The issue raised by Defendants in their Motion for Summary Judgment and the associated factual questions now before the Court are not those before the Federal Circuit and decided in *Bid for Position*. Instead, the issue is whether Konia discloses and anticipates a method in which competitive bid *amounts* are monitored to identify bid

changes, or only monitors an advertiser's relative *position*. Plaintiff asserts that Konia

discloses only the latter and, therefore, does not anticipate the '450 patent. A person of

ordinary skill would not understand Konia to disclose a method that monitors bid

amounts when his method solely relies upon position and his background admonishes

that it is "difficult" to monitor bids, creating the need for a system that "monitors the

current rankings in auctions," rather than their bids, "and automatically adjusts its bids

according to the rules defined by its user." (Konia, 1:23-30) Indeed, the Federal

Circuit's opinion in *Bid for Position* supports this conclusion, given that it held that

Konia's patent inapplicable to auctions where position cannot be used as a proxy for

relative bid value.[2]

---
[2]

The invention of the '450 patent takes a very different approach to bid management. Critically, the '450 patent method discloses monitoring the amounts of competitive bids on a keyword to identify bid changes (rather than using position targeting to make bid changes), which enables advertisers, or the system itself, to identify inefficient bids and eliminate them. The inventors released a product implementing bid monitoring shortly after filing the patent application that became the '450 patent, and this product proved effective in eliminating the inefficiencies of the former manual system. Ultimately, the manual system was replaced with an automated bidding model based upon bid monitoring, exactly as proposed and claimed by the '450 patent. By creating a more efficient and greatly expanded keyword market, the introduction of the '450 patent invention into the marketplace increased the overall revenue received by paid search engines. Predictably, this method has become the model used by all the major search engines, and the Defendants have reaped billions of dollars in revenue infringing the asserted claims of the '450 patent.

In contending that Konia anticipates the '450 patent's claims, the Defendants argue that Konia disclosed monitoring of "bids," although the language of Konia's claims

---

E.) Google then filed the instant Motion for Summary Judgment based solely on Konia on October 13, 2009 – and then still refused to produce the requested documents despite numerous additional correspondence and face-to-face meet and confers while the Motion for Summary Judgment was being briefed and ultimately argued on February 10, 2010. (See Exhibit F.) On March 8, 2010, Plaintiff was forced to file a motion to compel (Dkt. 124) seeking production of the documents. Google then produced the requested documents, including the transcripts at issue, on March 11, 2010.

The *de novo* review this Court must conduct provides the Court with discretion to review evidence not presented below. *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998); *M I T v. Abacus Software*, 2004 U.S. Dist. Lexis 3050 (E.D. Tex. Sept. 29, 2004) (Folsom, J.); *epicRealm, Licensing v. Autoflex Leasing*, 2007 WL 1828014 (E.D. Tex. June 26, 2007) (Folsom, J.). In deciding whether to exercise this discretion, this Court is to consider several factors, including the moving party's reasons for not originally submitting the evidence and whether the evidence was previously available when it responded to the summary judgment motion. *Performance Autoplex II v. Mid-Continent Cas.*, 322 F.3d 847, 862 (5th Cir. 2003); see also *M I T.*, 2004 U.S. Dist. Lexis, at *18. Plaintiff would respectfully suggest that these factors weigh in favor of considering the testimony in this case.

makes clear that its method "monitors the current *rankings* in auctions and automatically adjusts the bids according to the rules defined by its user." (Defendants' Motion for Summary Judgment, 12) (citing Konia, 1:27-30) (emphasis added). They have provided no expert or other evidence supporting their assertion or interpretation that it does so. Once the Federal Circuit released its decision in *Bid for Position,* the Defendants attempted to cure this deficiency by insisting that it was "supplemental authority" on this issue. They now cite the very patent language that Google argued established the type of auction Konia requires and the corresponding language of the Federal Circuit's opinion accepting this argument and contend that the Federal Circuit held that Konia monitors bid amounts – an issue never reached by the Federal Circuit.

In recommending that the Defendants' Motion for Summary Judgment be granted as to claims 12, 18, and 22 of the '450 patent, the Recommendation commits two fundamental errors in concluding that no question of fact as to anticipation exists. First, it appears to hold that the Federal Circuit determined in *Bid for Position* that Konia discloses monitoring bid amounts. This is incorrect; the Federal Circuit never considered this issue, much less decided it. The issue therefore remains for this Court to decide. Second, in light of the fact that it remains an open issue to decide, the Recommendation's failure to consider Plaintiffs' unrebutted expert testimony as to whether Konia anticipates claims 12, 18, and 22 of the '450 Patent violates Rule 56 of the Federal Rules of Civil Procedure and decades of binding precedent. It must therefore be rejected by this Court.

## III.  LAW AND ARGUMENT

### A.  *The Court Must Review the Recommendation De Novo.*

Pursuant to both statute and rule, district courts must conduct a *de novo* review of

a magistrate judge's report and recommendation on dispositive matters such as summary judgment. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 141 (1985). Under *de novo* review, the report and recommendation is given no presumptive weight and the district court judge has the ultimate responsibility to make an informed, final determination. *Matthews v. Weber*, 423 U.S. 261, 270-71 (1976); *see also Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983) ("[T]he statutory obligation of the district court to arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made is not satisfied by a mere review of the magistrate's report itself."). Ultimately, a district judge is free to "accept, reject, or modify" findings or recommendations made by the magistrate judge," "receive further evidence" for consideration in making a determination, or "recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b)(3); *Hammond v. Pearle Vision*, 659 F. Supp. 2d 784, 785 (E.D. Tex. 2009).

### B. The Recommendation Improperly Resolved Genuine Issues of Material Fact.

"Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Zenith Elec. v. PDI Comm. Sys.*, 522 F.3d 1348, 1355 (Fed. Cir. 2008); *see also* FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel.*, 20 F.3d 633, 635 (5th Cir. 1994) (citing *Anderson*, 477 U.S. at 248). "Summary judgment will not lie if the dispute about a material fact is

- 12 -

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Whether a factual dispute exists is the principal inquiry of the summary judgment procedure. *See Ecology Center of Louisiana, Inc. v. Coleman,* 515 F.2d 860, 864 (5th Cir. 1975); 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §2725 (2008). In making this determination, "the court must review all of the evidence in the record, but make no credibility determination or weigh any evidence." *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000). Thereafter, "summary judgment should only be granted where there is 'not the slightest doubt as to the facts and that only the legal conclusion remains to be resolved.'" *Coke v. General Adjustment Bureau,* 616 F.2d 785, 791 (5th Cir. 1980) (quoting *Clark v. West Chem. Prods,* 557 F.2d 1155, 1157 (5th Cir. 1977)). Clearly, within the circumstances of this Motion, genuine issues of material fact remain, and summary judgment is inappropriate.

1. *The Recommendation Improperly Relied on the Federal Circuit's Opinion in Bid For Position to Determine What Konia Discloses.*

In the Recommendation, Magistrate Judge Everingham failed to recognize the limited scope of the Federal Circuit's analysis and ruling. In holding that Konia "monitors the bid amounts" of advertisers, he relied solely upon the language of the claims and the *Bid for Position* opinion that specified only the type of auction Konia requires:

> Likewise, the claims explain that the invention 'check[s] for whether a first bid from the first bidder exceeds a second bid from the second bidder.' (Konia, claims 1, 11); *accord Bid for Position,* 601 F.3d at 1318 (explaining that 'it is the comparison of the bids (i.e., the bid amounts submitted by the bidders) that determines the position of priority")....
> Thus, in determining priority, Konia monitors the bid amounts.

(Recommendation, 6.)

- 13 -

As detailed in both Plaintiff's Response to Defendants' Notice of Supplemental Authority (Dkt. 139) and the Background and Procedural Posture section *supra*, the Federal Circuit did not consider this issue in *Bid for Position*. It certainly did not hold that "Konia monitors bid amounts." Instead, the Federal Circuit concluded that Google did not infringe Konia because Google's AdWords auction was not the type of auction Konia required – nothing more. To hold otherwise and to use this as any foundation in the Recommendation for whether Konia monitors bid amounts is simply error.

The Recommendation relied upon this erroneous conclusion in that finding claim 12, which claims "monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer," is anticipated by Konia. As claims 18 and 22 depend from claim 12 and require such monitoring, the Court also relied upon this erroneous conclusion to find claims 18 and 22 anticipated as well. Given that the *Bid for Position* decision may not serve as a basis for concluding that Konia monitors bids, this aspect of the Recommendation must be rejected in full. As a result, some other indisputable evidence must establish that no dispute of material fact exists as to whether Konia discloses monitoring of bid amounts to identify potential changes in the offeror's offer indicative of optimization opportunities before the Court may grant summary judgment on this issue. As discussed in the next section, no such indisputable evidence exists. In fact, Plaintiff is the only party who has submitted *any* evidence concerning anticipation, and it refutes Defendants' arguments on this issue.[3]

---

[3] In light of this fact, the Court has the power to grant summary judgment finding that Konia does *not* anticipate claims 12, 18, and 22 of the '450 patent. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[Under Fed. R. Civ. P. 56], district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was put on notice that [it] had to come forward with all of its evidence."); *Massey v. Del Labs*, 118 F.3d 1568, 1572 (Fed. Cir. 1977) ("In many cases, where the factual record has been well developed before the summary judgment stage, the grant of

2.  *The Recommendation Impermissibly Disregarded the Hochman Declaration and Improperly Resolved a Genuine Issue of Material Fact as to What Konia Discloses.*

"[A]nticipation must speak affirmatively and with certainty; must disclose the invention without debate." *Catalin Corp. of Amer. v. Catalazuli Mfg.*, 79 F.2d 593, 596 (2d Cir. 1935) (Hand, L., J.). It is well established that anticipation is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009). So too is the question of what a particular reference discloses. *Honeywell Int'l v. United States*, 2010 U.S. App. Lexis 10577, *10 (Fed. Cir. May 25, 2010) (citing *Para-Ordnance Mfg. v. SGS Imps. Int'l*, 73 F.3d 1085, 1088 (Fed. Cir. 1995)). Evidence regarding anticipation, both what is disclosed by a prior art reference and whether that reference anticipates the claims-at-issue, typically comes from testimony from one skilled in the art. *Schumer*, 308, F.3d at 1315.

In this case, PSET submitted the Hochman Declaration to establish evidence as to what Konia discloses from the perspective of a person of ordinary skill in the art and whether that disclosure anticipates the claims of the '450 patent at issue. (Hochman Decl. ¶ 5). *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."). Hochman concluded that none of the '450 patent's claims are anticipated. For example, with respect to the monitoring limitation, Hochman opined that a person of ordinary skill in the art would understand that Konia monitors relative bid positions, or ranks, rather

---

summary judgment to the non-movant may well be the most efficient manner to decide a case."); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2720 (2008).

than bid amounts. Citing the Konia patent, Hochman stated:

> Konia states at column 1, lines 27-29, that there "exists a need for a system that monitors the current rankings in auctions." "Rankings" refer to bid positions in an auction and is different and distinct from keyword bids. Thus Konia is directed to determining continuing priority of a service in an auction and looks at bid rankings, not keyword offers of others, to place the bid in the position indicated by the advertiser that the advertiser desires.

(Hochman Decl. ¶ 8). Hochman assessed the disclosure of the Konia patent to be "strictly a 'bid for position' system," (Hochman Decl. ¶ 10), and described the method employed by Konia that only checks and rechecks a subscriber's rank or position. (*Id.* at ¶¶ 12-16). According to Hochman, the only relevant inquiry posed by Konia's system is "Position lower than desired?" (*Id.* at ¶ 15). Hochman includes examples of the system described by the Konia patent to illustrate this understanding further. (*Id.* at ¶ 16).

The Recommendation neither explained why Hochman was incorrect nor discredited his conclusions in any way. The Defendants failed to rebut the Hochman Declaration with anything other than attorney argument. Accordingly, the only testimony by one skilled in the art as to Konia's disclosure and the issue of anticipation was proffered by Plaintiff and supported a finding that no anticipation exists. The Recommendation, however, simply proceeded as if Hochman's Declaration was not of record in the case and concluded that summary judgment was appropriate. This is error.

Before this Court may grant summary judgment on the grounds of anticipation, "there must be no genuine dispute whether the limitation of the claimed invention are disclosed, either explicitly or inherently, by an allegedly anticipating prior art reference." *Hazani v. United States ITC*, 126 F.3d 1473, 1477 (Fed. Cir. 1997). It is blackletter law, however, that conflicting expert opinions on a given factual issue serve to create genuine

disputes of material fact concerning that issue. *See Metro. Life Ins. v. Bancorp Servs.,*
527 F.3d 1330, 1338-39 (Fed. Cir. 2008); *Helifix v. Blok-Lok,* 208 F.3d 1339, 1351-52
(Fed. Cir. 2000). Unrebutted expert testimony from the party opposing summary
judgment must do at least as much.

Anticipation and disclosure are no exceptions to this rule. The Federal Circuit
and the lower federal courts have expressly held that granting summary judgment for
anticipation in the face of expert testimony on the issue is improper. For example, in
*Dayco Prods. v. Total Containment,* 329 F.3d 1358 (Fed. Cir. 2003), the patent holder
submitted an expert declaration urging that the prior art failed to anticipate the patent-in-
suit. Defendant TCI submitted no responsive expert declaration. *Id.* at 1369. Despite this
shortcoming, the district court nonetheless granted summary judgment in favor of TCI,
concluding that "[t]he reference and the claimed invention are easily understandable
without the need for expert testimony." *Dayco Prods. v. Total Containment,* 218 F.
Supp. 2d 1129, 1137 (W.D. Mo. 2002). On appeal, the Federal Circuit reversed, holding
that the district court's failure to find a question of fact in light of the unrebutted
testimony of Dayco's expert was error:

> The first prior art reference addressed by the district court was the Lusher
> patent. The district court concluded that "[t]here are no genuine factual
> disputes" and described its interpretation of the teachings of Lusher.
> *Dayco,* 218 F.Supp.2d at 1137-38. In particular, the district court
> described Figure 2 of Lusher...as anticipating the asserted claims of the
> patents-in-suit.
>
> As this court has stated, "the dispositive question regarding anticipation
> [i]s whether *one skilled in the art* would reasonably understand or infer
> from the [prior art reference's] teaching" that every claim element was
> disclosed in that single reference. *In re Baxter Travenol Labs.,* 952 F.2d
> 388, 390, 21 USPQ2d 1281, 1284 (Fed.Cir.1991) (emphasis added); *see
> also Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315, 64
> USPQ2d 1832, 1841 (Fed.Cir.2002).... Dayco filed an expert declaration
> in the district court urging that the asserted claims of the patents-in-suit

> were not anticipated because of the failure of the prior art to disclose
> specific claim limitations. TCI submitted no responsive expert declaration.
> The district court improperly dismissed Dayco's expert report because
> "[t]he reference and the claimed invention are easily understandable
> without the need for expert testimony." *Dayco,* 218 F.Supp.2d at 1137.

*Dayco,* 329 F.3d at 1368-69.   It is simply too late in the day to deny this controlling

doctrine, as the Federal Circuit and other federal courts have repeatedly held for more

than a century that expert testimony concerning anticipation creates a question of fact that

can only be resolved by a jury.   *See, e.g., Keyes v. Grant*, 118 U.S. 25, 36-37 (1886)

(holding that whether the "specification of the plaintiffs' patent, and the publication of

Karsten…described the same thing…was a question of fact properly to be left for

determination to the jury" where expert testimony was proffered on the issue); *Med.

Instrument. & Diag. v. Eleckta AB,* 344 F.3d 1205, 1221 (Fed. Cir. 2003) (holding that, in

light of expert testimony, "the issue of exactly what the reference teaches is something

that should have been resolved by the jury"); *Total Containment, Inc. v. Environ Prods.*,

1999 U.S. App. Lexis 22072, *11 (Fed. Cir. 1999) ("At the very least, anticipation

remains a genuine issue of material fact with specific, plausible and detailed testimony by

dueling expert witnesses and, therefore, summary judgment is inappropriate."); *Sepracor

v. Dey*, 657 F. Supp. 2d 478, 484-85 (D. Del. 2009) ("Given the conflicting expert

testimony…the Court concludes that a genuine issue of material fact remains…which

precludes summary judgment on the overall issue of anticipation."); *Mangosoft v. Oracle*,

421 F. Supp. 2d 392, 404 (D. N.H. 2006) ("The disparity in expert witness testimony

raises a question of material fact sufficient to preclude the court from granting

Mangosoft's motion for summary judgment in regards to anticipation by the IBM

reference."); *Acoustiflex Corp. v. Owens-Corning Fiberglass*, 572 F. Supp. 936, 937

(N.D. Ill. 1983) ("A patent case is not ripe for summary judgment on the issues of

- 18 -

validity or enforceability...where the expert testimony submitted is conflicting...."); *Advanced Fiber Techs. Trust v. J&L Fiber Servs.*, 2010 U.S. Dist. Lexis 45938, *17-18 (N.D. N.Y. May 11, 2010) ("Whether a prior art reference anticipates a claim is an issue of fact for which evidence, including expert testimony, may be introduced."); *Abstrax v. Dell*, 2009 U.S. Dist. Lexis 93605, *14-15 (E.D. Tex. Oct. 7, 2009) (holding that expert report, among other evidence, created a genuine issue of material fact with respect to anticipation); *Trimble Navigation v. RHS*, 2007 U.S. Dist. Lexis 71665, *22 (N.D. Cal. Sept. 17, 2007) (finding expert testimony sufficient to create a genuine and material issue of fact regarding anticipation); *Volovik v. Bayer*, 2004 U.S. Dist. Lexis 300, *16-17 (D. Minn. 2004) ("Viewing the evidence in the light most favorable to [the non-moving party] and considering the reports of the parties' expert witnesses...there is a genuine issue of material fact" regarding anticipation."); *Space Sys. v. Lockheed Martin*, 2003 U.S. Dist. Lexis 26458, *12-13 (N.D. Cal. Apr. 30, 2003); *Knoll Pharm. v. Teva Pharms. USA*, 2002 U.S. Dist. Lexis 17201, *25 (N.D. Ill. Sept. 13, 2002) ("[S]ummary judgment on the issue of anticipation is inappropriate because, based on plausible and detailed expert statements, there remains a genuine issue of material fact as to the knowledge of the person of ordinary skill in the art regarding the claim").[4]

In this case, the Recommendation did not merely weigh PSET's arguments supported by a sworn expert declaration against Defendants' arguments unsubstantiated

---

[4] This is in accord with the generally indisputable principle that expert testimony often creates a question of fact requiring resolution by a jury, particularly when the proffered testimony is unrebutted. *See, e.g., Newport Ltd. v Sears, Roebuck & Co.*, 6 F.3d 1058, 1069 (5th Cir. 1993) (holding that district court erred finding no dispute of material fact with respect to damages when unrebutted expert testimony concerning the amount of damages was offered); *Square D v. Pioneer Breaker & Supply, et al.*, 2009 U.S. Dist. Lexis 118496, *25 (W.D. Tex. Dec. 18, 2009) (holding that unrebutted expert testimony concerning authenticity of counterfeit products created a question of fact that could not be resolved by summary judgment). This principle controls in this case as well, requiring rejection of the Recommendation currently before the Court.

by any such evidence – error that, standing alone, would require rejection of the Recommendation. *See Invitrogen v. Clontech Labs.,* 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [a party's] burden on summary judgment."). Instead, it ignored the expert testimony entirely and found summary judgment warranted. The Recommendation's failure to consider this evidence and find that a genuine question of material fact existed with respect to anticipation is error, and it must be rejected by this Court.

### C.    *Konia Does Not Anticipate the Claims of the '450 Patent.*

In the Recommendation, Magistrate Judge Everingham substituted its own understanding of the Konia patent for that of a person of ordinary skill in the art in wrongly concluding that Konia anticipates the '450 patent. "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *SRI Int'l v. Internet Security Sys.,* 511 F.3d 1186, 1192 (Fed. Cir. 2008). "An anticipating reference must disclose all elements of the claim within the four corners of the document as arranged as in the claim." *Net MoneyIN v. VeriSign,* 545 F.3d 1359, 1369 (Fed. Cir. 2008). Because issued patents are presumed to be valid, anticipation must be proven by clear and convincing evidence, whether at trial or in the context of a summary judgment motion. *Invitrogen v. Biocrest Mfg.,* 424 F.3d 1374, 1378 (Fed. Cir. 2005). "The dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference." *Akamai Techs. v. Cable & Wireless Internet Servs.,* 344 F.3d 1186, 1192 (Fed. Cir.

2003). Based upon the Hochman Declaration, the Recommendation's answer to that dispositive question can only be a resounding "no."

1. *Konia Does Not Anticipate Claim 12.*

An anticipation defense must fail if the alleged anticipatory reference fails to disclose even one limitation of the claim. *See Net MoneyIN,* 545 F.3d at 1369. Claim 12 of the '450 patent contains, among other limitations, the step of "monitoring keyword offers at one or more Internet search engines to identify a change in said offeror's offer of interest to said offeror." Simply put, Konia does not do this. (Hochman Decl. ¶ 25). Whereas the '450 patent monitors "keyword offers to identify a change in said offeror's offer of interest to said offeror," Konia monitors rankings to determine relative placement of advertisers. As such, Konia never knows or needs to know the amount of any of the competing offers, only the relative rankings of the advertisers. This key distinction between the two patents renders the methods they disclose fundamentally different and requires the conclusion that the Konia Patent does not anticipate claim 12.

As detailed in paragraphs 11 through 22 of the Hochman Declaration, Figure 2 of the Konia patent illustrates the method described by Konia to address this problem. (Konia, 4:19-21). Figure 2 discloses a loop that begins with step 206 in which the system loops through each term upon which the bidder has bid in the search engine. Step 208 checks to determine whether the bidder's desired position is met for the particular web page and term: "Position lower than desired?" The specification confirms this, noting that "[t]he system checks for whether the bidder's desired position is met for the particular web page and term, step 208." (Konia, 4:50-52). If the system detects that the position is lower than that desired, Konia will blindly increment the bid upward at step 212. The

process will periodically compare the bidder's actual position to the bidder's desired position and make adjustments to the bid as a result.

The method disclosed in the Konia Patent functions entirely without knowledge of the actual bid amounts that advertisers have placed on particular keywords. It only compares relative rankings. Very simply, if an advertiser has indicated that it desires to be placed in position 2 for a keyword, Konia will look to see if the advertiser is in position 2. If the position is lower, the system will incrementally raise the advertiser's bid until the advertiser reaches position 2 or its maximum bid is reached. Conversely, if the advertiser's placement is higher than position 2, the system will incrementally lower the bid until the advertiser reaches position 2. In fact, if the advertiser is in position 2, the system will incrementally and blindly lower the bid until the advertiser falls out of position 2. Konia does not "monitor [] keyword offers to identify a change in said offeror's offer of interest to said offeror." It does therefore not anticipate claim 12 of the '450 patent.

### 2. *Konia Does Not Anticipate Claim 18.*

Because claim 18 depends from claim 12, and claim 12 is not anticipated for the reasons stated above, claim 18 is also not anticipated. Claim 18 reads: "The method of claim 12 wherein the change comprises decreasing an offer to reduce a gap between the offeror's offer and a lower offer." As explained above, the Recommendation misconstrues a single citation to the specification of the Konia patent to support the anticipation of the claim 18. In so doing, it again failed to properly credit the Hochman declaration and determined that no genuine issue regarding the anticipation of claim 18 existed. Hochman stated that because Konia does not monitor keyword offers, it cannot

compare an offeror's offer to another offer. (Hochman Decl. ¶ 32). Accordingly, a change in the offer is not effectuated to reduce the gap between the two. (*Id.*) Again, the Recommendation merely combed the specification searching for a passage that appeared to disclose the limitation of claim 18, instead of reaching an understanding regarding the actual functioning of the system disclosed by the Konia patent from the perspective of a person of ordinary skill in the art. PSET again respectfully requests that the Court reject the Recommendation's proposal that claim 18 of the '450 patent is anticipated by the Konia patent.

3.      *Konia Does Not Anticipate Claim 22.*

Because claim 22 depends from claim 12, and claim 12 is not anticipated for the reasons stated above, claim 22 is also not anticipated. Claim 22 reads: "The method of claim 12 wherein said change is generated in response to offered prices and other data." The Recommendation found this claim anticipated because, in part, "PSET does not explain why Konia's disclosed bid rankings or positions would not qualify as 'other data.'" (Recommendation, 9).

No explanation is needed, however, because even assuming that bid ranks are "other data" within the meaning of the term as agreed to by the parties, Konia still does not perform the step of generating a change in response to offered prices. In that regard, claim 22 is not anticipated because the change must be generated from both "offered prices and other data." Claim 22 thus requires more than one factor be involved in the identification of a change, and thus is narrower than claim 12, as is appropriate for a dependent claim under 35 U.S.C. § 112(4). The Recommendation entirely fails to discuss the difference in scope between claims 12 and 22 or note that Konia only

monitors the relative position of the advertiser to determine whether or not the desired position has been achieved. (Hochman Decl. ¶ 10). Accordingly, in Konia, the change is not generated in response to "offered prices." Plaintiff again respectfully requests that the Court reject the Recommendation's proposal that claim 22 of the '450 patent is anticipated by the Konia patent.

As mentioned above, the Defendants offered no expert testimony regarding the teachings of the Konia patent, only the unsubstantiated argument of counsel. On the other hand, Plaintiff offers the Hochman Declaration, unrefuted testimony from the perspective of a person of ordinary skill in the art regarding issues raised in this motion. To the extent that the Defendants, or even the Recommendation in its understanding of the Konia patent, disagree with the evidence proffered by Plaintiff's expert declaration, a question of fact nonetheless exists for the jury to decide. *Shatterproof Glass v. Libby-Owens Ford*, 758 F.2d 613 (Fed. Cir. 1985). Summary judgment is therefore inappropriate, and the Court must allow these issues to be heard at trial by a jury.

## V.    <u>CONCLUSION</u>

For the foregoing reasons and those submitted in opposition to Google and Microsoft's Motion for Summary Judgment and Google and Microsoft's "supplemental authority," Plaintiff's Objections should be sustained.

Respectfully submitted,

PAID SEARCH ENGINE TOOLS, LLC

Dated:  July 21, 2010

*/s/ Elizabeth L. DeRieux*
Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
S. Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
CAPSHAW DeRIEUX, LLP
1127 Judson Road, Suite 220
Longview, TX 75601
Telephone:     (903) 236-9800
Facsimile:      (903) 236-8787

J. Robert Chambers (Admitted *pro hac vice*)
bchamber@whepatent.com
Adam G. Pugh (Admitted *pro hac vice*)
apugh@whepatent.com
Paul J. Linden (Admitted *pro hac vice*)
plinden@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202-2917
Telephone:     (513) 241-2324
Facsimile:      (513) 241-5960

Gregory M. Utter (Admitted *pro hac vice*)
gutter@kmklaw.com
W. Jeffrey Sefton (Admitted *pro hac vice*)
jsefton@kmklaw.com
KEATING, MUETHING & KLEKAMP, PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:     (513) 579-6400
Facsimile:      (513) 579-6457

ATTORNEYS FOR PLAINTIFF,
PAID SEARCH ENGINE TOOLS, LLC

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that under CV-5, the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

/s/ Elizabeth L. DeRieux
Elizabeth L. DeRieux

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2010, a true and correct copy of the foregoing was

served via electronic mail on all counsel of record.

/s/ Elizabeth L. DeRieux

3535169 5